J. S. HARPER v. R. R. PINKSTON et als.

*Slander of Wife—Action by Husband—Dismissal of Action.*

An action by a husband for slander of his wife, the wife not being a
party and the complaint alleging no special damage to the hus-
band, will be dismissed by this Court on motion of the defendant,
or *ex mero motu*, for failure of the complaint to state a cause of
action.

AVERY, J., concurring: (Discussion of Lord Denman's Act, section 580
of *The Code*, bill of discovery, matters of privilege, etc.).

CIVIL ACTION, brought to Fall Term, 1892, of VANCE
Superior Court, by J. S. Harper against R. R. Pinkston,
J. A. Bridges, W. E. Gary and W. L. Cunninggim for
alleged slander of plaintiff's wife. The complaint was as
follows:

"1. That plaintiff was, on the 28th day of November,
A. D. 1883, legally married to his present wife, then Miss
Lizzie A. Moss, and the marriage has continued until the
present time.

"2. That on the —— day of ——, 1891, the defendants, in
said county of Vance, in the presence and hearing of divers
good citizens of said county, as plaintiff is informed and
believes, maliciously and wantonly spoke and published of
and concerning plaintiff's said wife substantially the follow-
ing false, scandalous and defamatory words, to-wit: 'Mrs.
Lizzie Harper is guilty of immorality,' or other words of
like import and meaning, thereby meaning to charge, and
did charge, and were understood by said good citizens and
by-standers to charge, plaintiff's said wife with incontinency,
to plaintiff's great damage, to-wit, ten thousand dollars.

"For a second cause of action, the plaintiff complains of
the defendants, and alleges:

"1. That on the 28th day of November, A. D. 1883,

plaintiff was legally married to Lizzie A. Moss in said county and State, and that said marriage has continued until the present time.

"2. That he is informed, and he believes his information to be true, that on or about the —— day of ——, A. D. 1891, in said county of Vance, in the presence and hearing of divers good citizens of said county, the defendants Pinkston, Gary and Bridges, through and by the defendant Cunninggim, the said Cunninggim concurring, wantonly, wickedly, falsely and maliciously spoke and published of and concerning plaintiff's said wife substantially the following false, scandalous and defamatory words, to-wit: 'We have investigated, and find that Mrs. Lizzie Harper (meaning plaintiff's said wife) is guilty of immorality,' or other words of like import and meaning, thereby charging and intending to charge, and were understood by said good citizens and by-standers to charge, plaintiff's said wife with incontinency, and that the defendants had found such charge to be true after a careful and impartial investigation of facts and circumstances derived from trustworthy and reliable sources, to plaintiff's great damage, to-wit, ten thousand dollars.

"Wherefore, plaintiff demands judgment for ten thousand dollars damages and for all costs of action."

After complaint was filed the defendants were summoned for examination before the Clerk, under sections 584—585 of *The Code*, and on their appearance objected to the examination and moved to quash the proceedings, on the following grounds:

1. That in an action of slander or libel no examination can be had under sections 580—585 of *The Code*, since such sections do not apply in actions for torts.

2. That the complaint does not set forth a sufficient cause of action, in that the wife of the plaintiff is not a

party plaintiff, and no slanderous words are sufficiently charged to have been spoken or published of the plaintiff by defendants, and no special damage is alleged by him, and that no definite and certain time is stated as to when the alleged words were spoken or published.

3. That the investigation alleged in said complaint was a church examination, under church discipline, in the matter of Mrs. Lizzie Harper, then a member of the M. E. Church, South, of which said church defendants were also members, and all matters pertaining to such investigation are privileged.

4. That in said action there is a misjoinder of parties defendant, in that there cannot be a joinder of defendants in an action of slander.

5. That the innuendo is not supported by the language charged.

The Court sustained objections one and three and refused to proceed with the examination, and plaintiff appealed to Judge Connor, who overruled the Clerk's order, and directed him to proceed with the examination.

On February 3, 1893, the parties were reconvened and defendants renewed their objections, which were entered by the Clerk, and all questions propounded to the witness were objected to. Upon the examination, one of the defendants, Rev. W. L. Cunninggim, was asked whether Barnes and Jordan testified (before the church committee) to acts of criminal intercourse with plaintiff's wife. The defendants objected to the question upon the ground that it was an inquiry into their defence to the action, and upon grounds before stated. The objection was overruled, and defendants appealed to Judge Shuford. His Honor dismissed the appeal, holding that it was the duty of the Clerk to write down the questions and answers, except privileged ques-

tions, and certify the same to the Superior Court. From this ruling the defendants appealed.

Messrs. H. T. Watkins, Pittman & Shaw and Edwards & Wortham, for plaintiff.

Messrs. R. O. Burton and W. R. Henry, for defendants (appellants).

CLARK, J.: The wife, who alone is charged to have been slandered, is not a party to the action. There being no special damage alleged as to the husband, who is the sole plaintiff, the complaint fails to state a cause of action. Newell on Defamation, 365, 1849; Odger's Slander and Libel, 313, 346; Folkard's Starkie on Slander, 332; The Code, §177. The words were not used in regard to the husband, and his reputation certainly has not been assailed. He must aver special damage. The action should, therefore, be dismissed on the motion made here by the defendant. Indeed, it might have been done ex mero motu by this Court. Rule 27 of Supreme Court; Hagins v. Railroad, 106 N. C., 537; Gordon v. Sanderson, 83 N. C., 1.

This makes it unnecessary to consider the interesting questions raised on the argument. There is no case of which a Court can take cognizance.

Action Dismissed.

AVERY, J., concurring: When Lord Denman's Act was passed by Parliament in 1851, the various courts of law and chancery were still maintained with the established procedure in each, and this fact, in part, accounts for the modification of the second section of that statute by the Acts of 1866 (Bat. Rev., ch. 43, sec. 15), and the subsequent acts culminating in the enactment of The Code, §580. The English statute provided that in all actions or proceedings,

and at all stages, before any person having authority to hear evidence, "the parties thereto and the persons in whose behalf any such suit or action or other proceeding may be brought or defended, *shall, except as hereinafter excepted,* be competent and compellable to give evidence, either *viva voce or by deposition, according to the practice of the Court,* on behalf of either or any of the parties to the said suit, action or other proceeding."

In section six of Lord Denman's Act it was also provided that in all actions pending in the Superior Courts of common law the right of compelling the production of, of inspecting and of taking copies of the papers of, an adversary party should be confined to those cases where a discovery might have been obtained at the instance of the moving party by a bill or other proceeding in a court of equity.    14 and 15 Vic., 91 Stat. at Large, ch. 99, sections 2 to 6, inclusive; 2 Taylor on Ev., sec. 1217.    When courts of equity were abolished in this State the Code of Civil Procedure was passed, embracing what are now sections 579 to 584 of *The Code,* both inclusive, and section 588 *in totidem verbis,* except the proviso to section 580.    Bat. Rev., ch. 17, sections 332 to 341.    Section 579 provided that "no action to obtain discovery under oath in aid of the prosecution or defence of another action shall be allowed, etc., *except* in the manner prescribed by this chapter."    Except the proviso (to section 580) *The Code* of New York (Vorhees, sections 389 to 397, both inclusive) contains precisely the same language as that embodied in our statutes (sections 579 to 587 of *The Code*).

The mode subsequently substituted for the equitable proceeding was to compel a party, at the instance of his adversary, *"in the same manner and subject to the same rules of examination as any other witness,* to testify either at the trial or conditionally or upon commission."    What rules appli-

cable to testifying at trial or to deposing before a commissioner are still in force here? If, in recognizing the mode of examination adopted in equity practice before a commissioner to take depositions, we hold that parties should be entitled to the same protection as was afforded to other witnesses or to parties by the *rules of evidence* up to that time in force, in answering a bill of discovery, we would find in the practice of the courts of New York, and other States where the new procedure prevails, abundant authority to sustain us. But before passing upon that question, it may be well to recur to the restrictions adopted by courts of equity to prevent abuse of the statutory power of compelling an adversary to disclose information which was essential to the prosecution of a meritorious action against him, but was often wrongfully or fraudulently withheld.

1. A man was not compellable, in answering a bill of discovery, to criminate himself or to furnish a link in a chain of testimony tending to convict him of crime, or to make any disclosure tending to subject him to a penalty or forfeiture. Adams' Eq., pp. 2 and 3; 1 Pomerory Eq. Jur., sec. 202; *United States* v. *MacRae*, L. R., 3, 79; Story's Eq. Pl., secs. 553 and 575; *Liggett* v. *Postly*, 2 Paige R., 601; Cooley Const. Lim., marg. p. 394.

2. The office of such a bill was to compel the discovery "of facts resting in the knowledge of the defendant, or of deeds or writings in his possession or power, in order to maintain the right or title of the party asking it in some suit or proceeding in another court." *Pemberton* v. *Kirk*, 4 Ired. Eq., 178; 1 Pom. Eq. Jur., 195; Mitford's Eq. Pl., p. 21.

3. The bill of discovery could not be used to elicit information as to a controversy about a title that might possibly arise in the future or merely to pry into an adversary's grounds of defence in a pending action at law. *Baxter* v. *Farmer*, 7 Ired. Eq., 239; 1 Pom. Eq. Jur., sec. 201.

4. A party might by plea successfully resist disclosures sought by such a bill, not only on the ground that his answers might subject him to criminal punishment or to a forfeiture or penalty, but because, as many Courts held, the discovery might show him guilty of moral turpitude. 1 Story's Eq. Jur., sec. 595.

5. Though there is no little conflict between the leading text-writers of England and of this country on the subject, the weight of authority seems to be in favor of the proposition that a party could not be compelled to discover any matter which might tend to show such party liable in a pending civil action for libel or to be used in aid of such suit. Story's Eq., sec. 597, and note 3, sec. 553, and note 4, p. 571; 2 Story's Eq. Jur., sec. 1494, and note 1; *Glynn* v. *Houston*, 1 Keen R., 329; Mitford's Eq. Pl., marg. p. 195; *Opdyke* v. *Marble*, 18 Abbott, 269; Thompson on Trials, sec. 744. Both Thompson, in the sections just cited, and Judge Leonard, in the case of *Opdyke* v. *Marble, supra,* assume that "nothing is better settled than that no discovery could be made under the practice of the Court of Chancery in an action for libel."

When the opinion in *Opdyke* v. *Marble* was rendered there were two concurrent statutory provisions in New York that could be used in compelling the production of books and papers, the one exactly the same as the section of our Code (sec. 578—C. C. P., sec. 331), and the other a section of their Revised Statutes similar in its terms to section 82, chapter 31, of our Revised Code. Until the last codification of our laws both statutes were still in force here. *McLeod* v. *Bullard*, 84 N. C., 515. The section of the Revised Code had been enacted in 1828 to accomplish one of the objects attained in the passage of Lord Denman's Act, by enabling the Superior Courts of law to procure documentary evidence without invoking the aid of a

court of equity, but subject to the same limitations as to the extent of examination that were allowed by the chancellors. The statutory provisions now in force in North Carolina and in New York are and have been substantially the same, except that no discovery can be compelled under our statute until after suit is brought. 2 Am. and Eng. Enc., pp. 206 and 207.

In *Opdyke* v. *Marble, supra,* Mr. David Dudley Field, in his brief, insisted that under the Code of Civil Procedure and the old statute (corresponding with *The Code,* §578, and Rev. Code, sec. 82, ch. 31), together with the additional right given by the act in force there, to call for the production of papers before trial, the plaintiff could compel the production of the books of *The World,* a newspaper, in order to ascertain who, besides Mr. Manton Marble, were the owners of the paper and amenable to an action for libel. Upon that state of facts it was held that a discovery could not be had when " it would not have been allowed by the principles and practice of the late Court of Chancery," and therefore no discovery could be granted in an action for libel. It appears, therefore, that when, by our own statutes (Rev. Code, ch. 31, sec. 82), the courts of law were permitted to require disclosures in reference to books, papers, etc., they were subject, as were the English Superior Courts under Lord Denman's Act, to the restrictions imposed by the rules of the courts of chancery. When our courts of equity were subsequently abolished we adopted and enacted those sections of the Code of New York which had been previously construed ( *Opdyke* v. *Marble, supra*) as prescribing the same limits to the compulsory examination of adversary parties. The provisions of our Code having been passed after the Courts of New York and other States had construed them it may " *be presumed*" that they were enacted with a knowledge, if not approval, of the

judicial construction already given them. *Bridgers* v. *Taylor*, 102 N. C., 86; *Redmond* v. *Commissioners*, 106 N. C., 122.

Where the bill of discovery has been abolished by similar statutes in the various States of America and by the judicature acts in England, it seems to have been generally, if not universally, held that "all of the principles of the law of discovery, not modified or abrogated by the new statute, are still in full force." 2 Am. and Eng. Enc., 210; *Anderson* v. *Bank*, L. R. 2 Ch. Div. 644; *Cashier* v. *Craddock*, L. R. 2 Ch. Div. 240. Mr. Pomeroy says (1 Eq. Jur., sec. 194): "It follows from the foregoing statements that the suit for a discovery as a branch of the auxiliary jurisdiction is now confined to a portion only of the States and Territories, and even in those commonwealths a resort to it is quite infrequent. For this reason an extensive and minute discussion of the rules which govern it seems to be unnecessary. On the other hand, the principles and doctrines relating to discovery, which have been settled by the courts of equity and which determine what facts parties can be compelled to disclose and what documents to produce, and under what circumstances the disclosures or productions can be obtained, will still continue to be recognized by the Courts and to regulate their action in enforcing the examination of parties and the production of writings by means of the more summary statutory proceedings. The abolition or discontinuance of technical "discovery" has not abrogated those principles and doctrines." Recurring to the language of the statutes for the purpose of giving my own construction, we find that the Legislature may be said to have discontinued the formal bill of discovery, but to have retained the right to compel similar disclosures "in the manner prescribed" (section 579); that is, subject to the same settled method and rules of examination applica-

ble to other witnesses. Without adopting the extreme views of some text-writers that a discovery cannot be compelled, under the usual provisions in the new Codes of Procedure, in aid of any action of tort, or passing upon the question whether a party can be forced in any case to disclose his own moral turpitude, I am sustained by the general current of authority in holding that the defendant was not compellable, either in aid of the pending civil action for libel or in view of the possible use of his answer in a criminal indictment against him, to disclose what was meant by the word "merciful," and the nature of the rumors with reference to which it was used in the report. The palpable purpose in asking the defendant Cunninggim whether the committee had reported as to the conduct of the *feme* plaintiff after consultation with him, and, following that, upon receiving an affirmative response, by interrogating him as to what he and the committee meant by the use of the word "merciful" in the reports submitted to the church, was first to connect the witness, as an abettor and counselor, with the other defendants composing the committee, and then to establish the innuendo by showing from his own testimony a common purpose on the part of himself and the committee in the use of the words to charge the *feme* plaintiff with incontinency. The direct tendency of the question, therefore, was to furnish a portion of the evidence necessary to sustain not only the pending civil action for slander, but an indictment, if one should be found, for slandering an innocent woman (under *The Code,* §1113), against the witness and his co-defendant. It will be noted that no such protective proviso as that, applicable to proceedings supplementary to execution (*The Code,* §488 (5)), was enacted in reference to the ordinary examination of parties, and hence we may fairly infer that the Legislature intended, in omitting the provision as to

parties, to emphasize the fact that in all other cases, except that of an execution debtor, a party under examination should have the benefit of all such instructions as the law had, for his own safety, thrown around him in the conduct of the proceeding. The statute (*The Code,* §581) permits either party to demand the examination of an adversary "at any time before trial, at the option of the party claiming it, before the Judge or Clerk of the Court." When a party elects to have the examination before the Clerk, it would seem that the mode of conducting it must be in all respects the same as if had before the Judge. The examination was not conducted for the Clerk or Judge by a referee or commissioner. Conceding that the witness was not entitled to the benefit of the objection that his answer might criminate himself, unless he had rested his refusal to answer on that ground instead of his privilege as pastor as to confidential communications, we think it is clear that a plaintiff cannot use the privilege of examining a defendant for the purpose of extorting confessions that will tend to enable the plaintiff, in the very action in which the examination is had, to prove that the defendant has maliciously libeled him. It is not necessary, therefore, to determine whether it was the duty of the Clerk to caution the defendant and "advertise him of his right to decline" to answer, in view of the developments which must have made apparent the danger of self-crimination, if the theory of the plaintiff as to the innocence of the *feme* plaintiff should .prove to be well founded. 1 Greenleaf Ev., sec. 451, p. 549. Where a party offers himself as a witness in his own behalf on the trial of the action, he opens the door for questions on cross-examination that would not otherwise have been competent, and hence the case of *McDougald* v. *Coward,* 95 N. C., 368, is not even analogous to this. It has been expressly held by this Court that where Judges

hold courts on legal holidays their proceedings are valid and binding upon parties whose rights are affected by adjudications made on such days.   *State* v *Moore*, 104 N. C., 743.

It has been held in the case of *Fertilizer Co.* v. *Taylor*, decided at this Term, and in effect in *Parker* v. *McPhail*, that such interlocutory orders as that appealed from involve a substantial right, and are, therefore, subject to review in this Court.   As the record presents the questions raised fully, it was not essential that there should have been a formal statement of the case on appeal.

For the reasons stated I think that the Court erred.