NEWBERRY v. NORFOLK AND SOUTHERN RAILROAD CO.

---

NEWBERRY v. NORFOLK AND SOUTHERN RAILROAD CO.

(Filed September 22, 1903.)

1. EVIDENCE—*Claim and Delivery.*

Where goods are shipped to A. Alexander, and there are two persons of that name, it is competent to show by the shipper for whom they were intended.

2. DECLARATIONS—*Evidence—Claim and Delivery.*

Where one person claims goods by purchase of another, the declarations of the seller as to ownership of the same, he having never been in possession thereof, are not competent.

3. INSTRUCTIONS—*Charge—Fraud—Trial—Issues.*

Where there is evidence of fraud, it is not error for the trial judge to instruct that there was evidence of fraud, though there was no issue as to fraud.

ACTION by D. O. Newberry against the Norfolk & Southern Railroad and others, heard by Judge *M. H. Justice* and a

jury, at April Term, 1903, of the Superior Court of TYR-RELL County. From a judgment for the defendant the plaintiff appealed.

This was an action brought by plaintiff against defendant company for the recovery of fifty boxes of Fairbanks Gold Dust Washing Powder, alleged to be the property of plaintiff and in the possession of and detained by the defendant. At Spring Term, 1901, of the Superior Court of Tyrrell County, the N. K. Fairbanks Company was allowed to become party defendant, to which the plaintiff excepted. The defendants thereupon answered the complaint, denying the allegation in respect to the ownership of the property and the wrongful detention, and for a further answer alleged "that said property was never shipped to nor intended for Arthur Alexander, under whom the plaintiff is pretending to claim it, but it was intended by the shippers for Alfred Alexander; that even if it had been intended for Arthur Alexander, the defendants had the right to refuse to deliver it, for the reason that Arthur Alexander did not intend to pay for goods shipped to him, and was absolutely insolvent, which facts the plaintiff did know or could have known by reasonable inquiry; and the defendants further deny that plaintiff is a purchaser for value and without notice, even if said goods had been shipped to Arthur Alexander. They also say that Arthur Alexander never had any interest in said goods."

The case was tried upon the following issue: "Is the plaintiff the owner of the property described in the complaint?" To which the jury responded "No."

The plaintiff showed by the agent of defendant railroad company that the goods were received at the depot at Spruill's Bridge, billed to A. Alexander; that Arthur Alexander lived in Tyrrell County, about three miles from the depot; that Alfred Alexander lived at Creswell, Washington County,

about three-fourths of a mile from the depot. The plaintiff proposed to ask witness: "Which A. Alexander claimed the property in controversy?" Defendant objected, the objection was sustained and the plaintiff excepted.

The plaintiff introduced "Exhibit A": "Received of D. O. Newberry, one dollar and other valuable considerations for fifty cases Fairbanks' Washing Powder and twenty-five cases Prosperity Washing Powder, now in the warehouse at Spruill's Bridge. This November 24, 1899. (Signed) A. Alexander."

The plaintiff introduced "Exhibit B," being an order signed by A. Alexander to the witness Spruill, agent, to deliver the property to the plaintiff. He also exhibited a receipt for freight, $4.50, given to A. Alexander—plaintiff paying the amount of the freight.

The plaintiff proposed to ask the witness if any other A. Alexander claimed the fifty boxes of Gold Dust in controversy. Defendant objected, objection sustained and plaintiff excepted.

The witness further testified that he did not see the plaintiff pay Arthur Alexander anything when the receipt was signed or at any other time; that the papers were written and signed in the warehouse at Spruill's Bridge, where the goods were; that Alfred Alexander had no middle name; that Arthur Alexander was reputed to be insolvent; that neither Arthur Alexander nor the plaintiff ever produced any bill of lading for the goods. The plaintiff proposed to ask the witness: "Did Alfred Alexander ever claim these goods?" Defendant objected, objection sustained and plaintiff excepted.

For the purpose of showing title in Arthur Alexander, the plaintiff proposed to prove that Arthur Alexander said, when he signed the bill of sale, that he had ordered the goods, and to show that he was claiming the goods. Defendant objected, objection sustained and plaintiff excepted.

The witness further testified: "I did not deliver the goods to the plaintiff because Alfred Alexander had the bill of lading." The plaintiff proposed to ask the witness if the defendant Fairbanks Company made any claim for the property while in his possession. Defendant objected, objection sustained and plaintiff excepted. The witness further testified that Dr. Abney Alexander lives near Columbia, N. C., and that is his post-office; he does not ship any goods at Creswell.

The plaintiff, introduced in his own behalf, testified that he lives in Columbia, and knew Arthur Alexander, had dealings with him about the property in controversy. Exhibits A and B were signed at the warehouse in Creswell, in the presence of C. T. Spruill; the goods were in the warehouse at the time, and he did not know of any controversy about the goods; bought the goods from Arthur Alexander, and paid the freight, $4.50, at that time; was to pay $100 for the goods, and did pay between $65 and $75; that he presented the order, "Exhibit B," to Spruill, the agent, who refused to deliver the goods, and that neither the witness nor Arthur Alexander ever had a bill of lading for the goods.

The plaintiff proposed to show by himself, for the purpose of showing title and for the purpose of showing that Arthur Alexander was the consignee, that Spruill, the agent of the defendant railroad company, said at the time the order was presented that he would see Alfred Alexander to ascertain whether he claimed the goods, and that Alfred told witness that he did not claim them. Defendant objected, objection sustained and plaintiff excepted.

The plaintiff then proposed to show by the witness that Arthur Alexander said, in the presence of C. T. Spruill and himself at the time "Exhibits A and B" were signed and the freight was paid, as to who ordered the goods and to

whom they belonged. Upon objection the testimony was excluded and plaintiff excepted.

The witness further testified that Arthur Alexander's father was David Alexander, and that he had known Arthur for a number of years; there was very little, if anything, paid on the purchase price of the goods, except the freight, before the suit was brought; he only knew Arthur Alexander by that name, and he had known of his selling goods that he had ordered; this was after the purchase of the property in controversy; he also testified in regard to the sale of a piano, and that when he bought the goods in controversy he did not know that Arthur Alexander had not paid for them.

The defendant introduced testimony tending to show that Arthur Alexander's name was Arthur Bennett Alexander, and that he was never solvent; that he commenced ordering goods in his own name soon after he was twenty-one years of age; that witness had a thousand claims against him, and he said that he would not pay them; that up to the time Arthur began to use his name, Alfred signed his name "A. Alexander"; at these times he used the name of A. Alexander; Alfred Alexander signed his name "Alfred," after Arthur Alexander used the name "A. Alexander"; that Alfred Alexander was worth from $15,000 to $20,000.

Alfred Alexander was introduced, and testified that his name was "Alfred Alexander; that he did not order the Gold Dust and did not own or claim it, and he told Spruill and the plaintiff so; that Arthur's name was Arthur Bennett Alexander"; that in the winter of 1897 Arthur told him he had dropped the "Bennett" from his name; in the spring of 1897 or 1898 the goods began to come to A. Alexander; that he received at least one hundred different lots of goods, and sold them and searched purchasers at low prices.

The defendant introduced the deposition of A. H. Sheckley, who testified that at the time of the shipment of the goods

he was Credit Manager for the defendant Fairbanks Company; that the goods were shipped by his order from the stock of said company, and that they were intended for Alfred Alexander, Creswell, N. C. The witness testified as to the value of the goods.

During the argument for the defendant, counsel stated to the jury that there was a wholesale conspiracy between Arthur Alexander and R. E. Sample to rob and cheat the people of their goods and to bring disgrace and shame upon the people of Tyrrell County. The plaintiff objected, and his Honor stated that there was no evidence as to R. E. Sample, but there was considerable evidence of fraud as to Arthur Alexander; that Woodley had stated that he had a thousand claims against him, and he would not pay any of them.

Counsel for the plaintiff in the closing argument, replying to the argument of the defendant, appealed to the jury not to do an injustice to the plaintiffs and stamp them with fraud and robbery by taking from the plaintiff the goods to which, under the evidence, he was entitled; and to answer the first issue "No," they would have to find that the witnesses Newberry and Spruill had been guilty of fraud. The counsel for the plaintiff stated this time that they could not find a verdict for the defendant without branding Newberry and Spruill as perjurers.

At the close of the argument the Court commenced its charge to the jury by saying that "You have nothing to do with the results of this case. You are to pass upon the facts, and it is not necessary for you to find that the plaintiffs had committed perjury to answer the first issue 'No.'" Plaintiff excepted. The Court further charged the jury that "If you believe from the evidence that Arthur Alexander fraudulently procured the property to be shipped to A. Alexander upon the financial standing of Alfred Alexander, and by

fraud and deceit procured the same to be shipped to A. Alexander, and the shipper intended them for Alfred Alexander, and the railroad company refused to deliver the goods to Arthur Alexander, and the plaintiff knew it at the time he purchased the goods from Arthur Alexander, then the plaintiff has no title, and he cannot recover in this action, and you should answer the first issue 'No.' " Plaintiff excepted.

The Court further charged the jury that "If you find from the evidence that Arthur Alexander by fraud procured the property to be shipped to himself and did not pay for it, and by the fraudulent use of the name of A. Alexander, fraudulently leading the shipper to believe that the order was from Alfred Alexander, and that the property was in the hands of the railroad company, which refused to deliver it to Arthur Alexander, and the plaintiff knew that the company was refusing to deliver it to him, then the plaintiff would not be entitled to recover and you should answer the first issue 'No.' " Plaintiff excepted.

The plaintiff requested the Court to charge the jury that upon all the evidence in the case, if believed, the plaintiff is the owner of the property in controversy, and the jury should answer the first issue "Yes." The Court refused to so charge and the plaintiff excepted. That if Alexander did practice fraud to procure the Gold Dust, there is no evidence to show that the plaintiff knew of it, and the jury should answer the first issue "Yes." Refused, and the plaintiff excepted. That if the jury find the defendant Fairbanks Company shipped the Gold Dust to A. Alexander upon his order, and the same was billed to A. Alexander, and that A. Alexander sold the same to the plaintiff, the jury should answer the first issue "Yes." Refused, and plaintiff excepted. That there is no evidence in this case that the defendant Fairbanks Company has not been paid in full for the goods

in controversy; there is no evidence sufficient to show that A. Alexander made any misrepresentations to the Fairbanks Company, and if the jury believe the evidence, there was no fraud practiced upon the defendant to obtain the goods, and the jury should answer the first issue "Yes." Refused, and plaintiff excepted.

The Court, upon request of plaintiff, instructed the jury that there was no evidence that the defendant railroad company claimed any interest in the goods in controversy. The plaintiff further requested the Court to instruct the jury that there was no evidence that the Fairbanks Company objected to the delivery of the goods to the plaintiff or to A. Alexander, and it was the duty of the defendant railroad company to deliver the goods upon the order of A. Alexander, and if the jury believed all the evidence they should answer the first issue "Yes." Refused, and plaintiff excepted.

The Court charged the jury that if they found from the evidence that the goods were shipped to Arthur Alexander without fraud on his part in obtaining them, or if he procured them by fraud, and the plaintiff had no notice of the facts constituting the fraud when he bought the goods, then they should answer the first issue "Yes." The plaintiff appealed from the judgment rendered.

*George W. Ward* and *E. F. Aydlett,* for the plaintiff.
*W. M. Bond,* for the defendant.

CONNOR, J., *after stating the facts.* The pleadings and testimony present for determination the simple question whether the plaintiff was the owner of the goods in controversy. To maintain this proposition it was incumbent upon the plaintiff to show that the title had passed from the Fairbanks Company to Arthur Alexander, from whom he purchased. It appears that there was in the neighborhood one person whose

real name was Arthur B. Alexander and another whose real name was Alfred Alexander. Conceding that Arthur ordered the goods in the name of A. Alexander and the Fairbanks Company shipped them, supposing that they were ordered by Alfred Alexander and intending to sell and ship to him, and not to Arthur, no title passed to the latter. In the name "A. Alexander" there was a latent ambiguity, due to the fact that there are two persons having the same initials and in the same neighborhood. It was clearly competent to show, by the testimony of the shipper of the goods, to which of these two persons he sold and consigned the goods. The testimony of the witness Sheckley is uncontradicted, and, if believed by the jury, puts an end to the controversy. There was no contract of sale by the owner of the goods to Arthur Alexander. This view of the case was presented to the jury by his Honor, and, without regard to the other questions discussed in this Court, their finding entitled the defendant to judgment.

The declarations of Arthur Alexander were clearly incompetent and were properly excluded. The plaintiff could not show title in Arthur Alexander by his declarations in the absence of the defendant, the goods never having been for a moment in his possession.

In the view we take of the case, the somewhat forcible remarks of the defendant's counsel were harmless. As the defendant Arthur Alexander did not see fit to enlighten the Court and jury by going upon the stand, and as the plaintiff did not himself contradict the testimony of Sheckley or Woodley, or offer any testimony to do so, we think his Honor was warranted in saying to the jury that it was not necessary to answer the first issue "No" to find the plaintiff guilty of perjury. While it was not necessary to pass upon the question of fraud, we think his Honor's observation: "That there was considerable evidence of fraud as to Arthur Alexan-

der," had abundant foundation from the uncontradicted testimony.

The judgment of the Court being that the defendant the Fairbanks Company is entitled to recover the value of the goods, it being admitted that they could not be delivered in specie, we find no error in the record or the judgment, and the same is

Affirmed.