BLACKWELL'S DURHAM TOBACCO COMPANY v. THE AMERI-
CAN TOBACCO COMPANY et al.

(Filed 6 November, 1907).

1. **Foreign Corporations—Comity—Prohibited, or Terms Prescribed for Doing Business.**

Foreign corporation may, by comity, exercise in this State the general powers under its charter granted by another State, subject to the power of this State, within the limitations of the Federal Constitution, to prescribe the terms and conditions or to prohibit it altogether.

2. **Corporations—Same, or Similar Names—Injunctions—Pleadings.**

While it is unnecessary to allege actual fraud, a corporation cannot successfully seek injunctive relief against another corporation of the same or similar name for alleged irremediable injury arising from the use of the name by the latter company, in the absence of allegation that its corporate rights, for which it invokes protection, were in existence, or that it carried on business in accordance therewith, before the defendant committed the wrongs complained of, by carrying on business in this State under such name.

3. **Same—Pleadings—Domesticating Act—Collateral Action—Suit by State.**

The plaintiff corporation cannot successfully seek aid by injunction against the defendant, a foreign corporation doing business in this State under the same or similar corporate name, under the allegation that defendant has not complied with the statute by filing its charter and becoming a domestic corporation, as such is collateral to the action and determined only by the State in a direct proceeding.

4. **Practice—Demurrer ore tenus—Supreme Court.**

A demurrer *ore tenus* that, upon the allegations of the complaint, the plaintiff is not entitled to the relief sought, may be originally made before the Supreme Court.

CLARK, C. J., dissenting.

CIVIL ACTION; appeal by plaintiff from an order entered by *Biggs*, resident Judge, at chambers, in DURHAM County, on 6 July, 1907, quashing an order, or subpœna, made by *Justice, J.*, at chambers in Greensboro, requiring the defendants and the president and secretary of the corporations de-

fendant to testify and produce documents before a commissioner named in the order.

This action is brought by plaintiff against defendants, American Tobacco Company, Blackwell's Durham Tobacco Company (of New Jersey), C. W. Toms, W. W. Flowers, George W. Watts and D. W. Andrews. So much of the complaint as is material to the decision of the appeal is in the following language:

"1. That the plaintiff, Blackwell's Durham Tobacco Company, is a corporation, duly created, organized and existing under and by virtue of the laws of the State of North Carolina, with its principal office at Durham, in the county of Durham, State of North Carolina, and was so chartered and organized for the purpose of buying, manufacturing and selling tobacco in its various forms, including smoking tobacco, at Durham, within the county of Durham, in said State of North Carolina.

"2. That the defendant, the American Tobacco Company, is a corporation, created, organized and existing under and by virtue of the laws of the State of New Jersey, and is engaged in the business of buying, manufacturing and selling tobacco in various forms, including smoking tobacco and cigarettes, at Durham, in the county of Durham, in said State of North Carolina.

"3. That the defendant, Blackwell's Durham Tobacco Company (of New Jersey), is a corporation, created, organized and existing under and by virtue of the laws of the State of New Jersey, as the plaintiff is informed and believes, and the plaintiff alleges that the said Blackwell's Durham Tobacco Company (of New Jersey) is engaged in the manufacture of smoking tobacco under said alleged corporate name, at Durham, in the county of Durham, in the State of North Carolina, and in the sale thereof in the manufactured condition, under the aforesaid alleged corporate name of 'Blackwell's Durham Tobacco Company.'

"4. That the defendant, Blackwell's Durham Tobacco Company (of New Jersey), is not a copartnership and is not a corporation of the State of North Carolina, and there is no other existing corporation of this State, except the plaintiff, which has the corporate name of 'Blackwell's Durham Tobacco Company'; and if said defendant is a legal corporation at all, created and organized under any other State or government, the plaintiff is informed and is advised by counsel learned in the law, and believes and so alleges that the defendant, Blackwell's Durham Tobacco Company (of New Jersey), has never complied with the corporation laws of the State of North Carolina in that behalf made and provided, nor become domesticated as a North Carolina corporation, and it is not, therefore, authorized, but is expressly forbidden by the laws of the State of North Carolina, to do the business aforesaid, or any other business, at Durham, in the county of Durham, or elsewhere within the State of North Carolina, under the aforesaid corporate name of 'Blackwell's Durham Tobacco Company'; and the said defendant, 'Blackwell's Durham Tobacco Company' (of New Jersey) has been and is now unlawfully doing the aforesaid business of manufacturing and selling smoking tobacco at Durham, in the county of Durham, in said State of North Carolina, under the identical name of the plaintiff, in violation of the laws of this State and in violation of the plaintiff's corporate rights in the premises, to the plaintiff's irreparable injury and damage.

"5. That, as plaintiff is informed and believes, and so alleges, the defendant, the American Tobacco Company, under and pursuant to some business arrangement, contractual agreement, combination of business interests, or trust understanding between it and its codefendant, said Blackwell's Durham Tobacco Company (of New Jersey), the terms of which said business arrangement, contractual agreement, combination of business interests, or trust understanding are unknown to the plaintiff, has been and still is aiding and assisting and co-operating with the defendant, Blackwell's Durham Tobacco

145—24

Company (of New Jersey), in the aforesaid unlawful and unauthorized business of manufacturing and selling smoking tobacco at Durham, in the county of Durham and in the said State of North Carolina, in violation of the laws of this State and in violation of the plaintiff's rights in the premises, and to plaintiff's irreparable injury and damage.

"That the other defendants are residents of this State and are officers, agents, etc., of both defendant corporations. Whereupon, plaintiff demands judgment:

"(1) For a perpetual injunction against each and all of the defendants and their officers, agents, employees, servants and assigns, to perpetually enjoin and restrain them from using plaintiff's corporate name of 'Blackwell's Durham Tobacco Company,' or any other name so similar thereto as to lead to uncertainty or confusion in business, at Durham, N. C., or within the State of North Carolina.

"(2) For such other and further relief as plaintiff may be entitled to, together with the costs of this action."

Plaintiff obtained from the Judge presiding in the Ninth Judicial District an order for the examination of the officers, etc., of the defendant corporations before a commissioner appointed for that purpose, and for the inspection of the books of said corporations. Defendants moved the Judge to set aside and vacate the order, for the reasons set out in the motion and the notice thereof. Upon the hearing the motion was granted, and plaintiff appealed to this Court. When the case was called here for argument defendants demurred *ore tenus* and moved the Court to dismiss the action, for that:

"(1) There are no facts alleged in said complaint impugning the right of defendant, Blackwell's Durham Tobacco Company, to use its trade name of 'Blackwell's Durham Tobacco Company,' except that it is alleged that said defendant 'has never complied with the corporation laws of the State of North Carolina in that behalf made and provided, nor become domesticated as a North Carolina corporation, and it is not,

therefore, authorized, but is expressly forbidden by the laws of the State of North Carolina, to do the business aforesaid, or any other business, at Durham, in the county of Durham, or elsewhere within the State of North Carolina, under the aforesaid corporate name of "Blackwell's Durham Tobacco Company." ' Failure to comply with the corporation laws of said State, and to become domesticated, cannot be complained of by anyone except the Attorney-General in an action prosecuted by him in the name of the State to recover the penalty provided by the statute.

"(2) It is not alleged in said complaint that plaintiff corporation has ever engaged in business in the State of North Carolina, or elsewhere, and it is only by engaging in business that a corporation becomes entitled to a trade name, so as to complain of the use of that name by any one else."

*Guthrie & Guthrie* for plaintiff.

*Fuller & Fuller* and *Junius Parker* for defendants.

CONNOR, J., after stating the case: Plaintiff's right to equitable relief by way of injunction depends upon the maintenance of several propositions. The learned counsel, in his argument before us, insists that, by its charter and organization "for the purpose of buying, manufacturing and selling smoking tobacco in its various forms, at Durham, within the county of Durham," plaintiff acquired a property right in the corporate name, "Blackwell's Durham Tobacco Company"; that defendant company, of the same corporate name, chartered and organized in the State of New Jersey, by "engaging in the manufacture of smoking tobacco at Durham, in the same county," has so injured and damaged this property right, and threatens to continue to do so, that plaintiff is entitled to invoke the injunctive power of a court of equity for its protection; that the continued manufacture and sale of smoking tobacco at Durham by defendant will work irreparable injury to plaintiff.

For the purpose of discussing this phase of the controversy, the domicile of origin of defendant corporation is immaterial. In the absence of any prohibitory statute, a corporation having its domicile of origin, or, as is sometimes said, of creation, in one State, has, as a matter of comity, the right to carry on its corporate business, perform its corporate functions, in any other State. *Range Co. v. Carver,* 118 N. C., 329. "In harmony with the general law of comity obtaining among the States comprising the Union, the presumption should be indulged that the corporation of a State not forbidden by the law of its being may exercise within any other State the general powers conferred by its own charter, unless it is prohibited from doing so either in the direct enactments of the latter State or by its public policy, deduced from the general course of legislation, or from the settled adjudication of its highest court." *Union v. Yount,* 101 U. S., 356; *Bank v. Earle,* 38 U. S., 519; Womack Pr. Corp., sec. 640. This right is, of course, subject to the power of the State to prohibit altogether, or to prescribe the terms and conditions within the limitations of the Federal Constitution upon which a foreign corporation may come into its borders and exercise its corporate powers. We are, therefore, for this purpose, to regard the plaintiff and defendant corporations as exercising in a lawful manner, so far as the State is concerned, the powers conferred by their charters. It does not appear from the complaint—and upon this motion we may not find it elsewhere—which of the two corporations first acquired its charter, or whether the plaintiff acquired its charter before the defendant entered the State and engaged in the manufacture of smoking tobacco. It would seem that it was incumbent upon the plaintiff to allege that such corporate rights as it possesses, and of which it invokes protection, were in existence before the defendant committed the wrongs of which it complains. It is not easy to see how a corporation can successfully invoke the interference of a court of equity without

alleging its corporate creation prior to the alleged wrongful act of its adversary. If, for instance, the defendant had, before the creation of the plaintiff corporation, obtained its charter under its corporate name, acquired its corporate powers, organized and commenced to exercise them in this State and in the town of Durham, it would seem that it was the folly of the incorporators of plaintiff to take the same corporate name as that of the defendant, and that if any annoyance, inconvenience or injury was occasioned by reason of the similarity of names, no relief could be had in a court of equity.

In *Grand Lodge, etc., v. Graham,* 31 L. R. A., 133 (Iowa), it is said: "We do not think that a corporation can, under the statutes of this State, select a name which is then in use by some other person or persons, and, after recording its articles, insist that this person or (these) persons must abandon the use of the name they have previously selected and under which they are operating. If any damage results to a corporation which selects its name in this manner, it is due to its own folly and indiscretion in selecting a name which is already in existence and which is used by another body upon which the name was originally conferred." So, in *Ottoman Cahey Co. v. Dane,* 95 Ill., 203, it is said: "The fact that a corporation was organized under the laws of this State subsequent in date to the time defendant commenced business, which assumed the same name under which defendants were carrying on their business, could confer no right upon complainant to invoke the aid of a court of equity to restrain the defendants from the use of the name."

As it does not otherwise appear from the complaint, and as the demurrer admits all allegations and reasonable inferences to be drawn therefrom, we will, for the purpose of this discussion, assume that defendant either acquired its corporate name or that it began to engage in the business of manufacturing smoking tobacco in the city of Durham subsequent

to the corporate birth of the plaintiff. The question is thus presented, whether the plaintiff has acquired by its incorporation the exclusive right to the use of its corporate name, and to exercise its corporate powers in such name in the city of Durham, and whether it has so alleged in its complaint. That such right may be acquired, and that, when acquired, its use will be protected by the injunctive power of the court, is well settled. *Brown Chemical Co. v. Meyer,* 139 U. S., 540; *Elgin Watch Co. v. Illinois Watch Co.,* 179 U. S., 665. "The law having authorized the selection of a name, and having declared the name so selected to be the name of the corporation, we see no reason why the law should not protect the corporation in the use of that name, upon the same principle and to the same extent that individuals are protected in the use of trade-marks. Hence it necessarily follows that corporations, in the exercise of discretionary powers conferred by the statute, must so exercise them as not to infringe upon the established legal rights of others." *Holmes v. Holmes and others,* 37 Conn., 278.

"It is well settled that an exclusive right may be acquired in the name in which a business has been carried on, whether the name of a partnership or of an individual, and it will be protected against infringement by another who assumes it for the purpose of deception, or even when innocently used without right, to the detriment of another; and this right, which is in the nature of a right to a trade-mark, may be sold or assigned. * * * In respect to corporate names, the same rule applies as to the names of firms and individuals, and an injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation, which tends to create confusion and to enable the latter corporation to obtain, by reason of the similarity of names, the business of the prior one." *Higgins v. Higgins Soap Co.,* 144 N. Y., 462. The property right in the name of a corporation, as in a trade-mark, is acquired, not simply by adoption, but by using it.

The interference of courts is based upon the principle that the use of the name, or a trade-mark already acquired and used by another, is a fraud upon the person or corporation whose property it has become. *Lee v. Haley,* L. R., 5 Ch. App., 155. "A trade-mark can be acquired only by actual user of the mark in the market. A mere intent to use particular terms or marks as a trade-mark, however clearly manifested, is insufficient in the absence of actual user." 28 Am. and Eng. Enc., 393. That incorporation does not confer such right is clearly stated and illustrated in the opinion of the present Chief Justice in *Bingham School v. Gray,* 122 N. C., 699 (707), in which he says: "That the plaintiff is incorporated as the 'Bingham School' does not give it the exclusive right to that name. Another corporation might be created by and operated under the same title, when not in the same locality, in the absence of proof of an intent to injure the first-named corporation or to avail itself fraudulently of the other's good name and reputation. * * * The incorporation of the Bingham School, at Asheville, has only the usual effect of a charter—that is, to confer the corporate right of perpetual succession. * * * It did not have the effect of creating a trade-mark of the Bingham name, and of conferring the exclusive right to use it in connection with school purposes upon that corporation, nor is it a prohibition upon all others named Bingham, whether of that family or any others of the same name, using it in connection with any school they might establish." This is manifestly true, upon the reason of the thing. It cannot be the law that three or more persons may, either under our general corporation law or by special act of the Legislature, become incorporated by any name which they may select for the purpose of engaging in some branch of trade or manufacture, and thereby, without engaging in the business of buying, selling or manufacturing the article or product named in its charter, acquire a perpetual monopoly in the corporate name. This would be to create a

monopoly in a corporate name, without ever using it, by legis-
lative enactment, and in violation of our fundamental law and
the well-settled policy of the State. The law has been settled
against plaintiff's contention in many cases. In *Lawson v.
Bank of London,* 86 E. C. L., 84, *Jervis, C. J.,* said: "All
that appears is, that the plaintiff was the promoter of a cer-
tain bank, called the Bank of London, which he proposed to
establish in the city of London; that he had incurred expense
in putting up the name on a brass plate and in publishing
prospectuses, and that some one else has beaten him in the
race and established a bank under the same name by virtue
of letters patent. It does not appear that the plaintiff has
ever carried on the business of banking, or that he had a single
customer, or that he was in a position to be damnified by the
acts of the defendants. I therefore think, without entering
into the question how far a corporation established for trading
purposes might render itself liable to a charge such as that
now sought to be fixed upon these defendants, enough is not
alleged in the declaration to show that the plaintiff has sus-
tained any injury, and consequently the action will not lie."
The language of *Cresswell, J.,* is very pertinent: "The plain-
tiff, in his declaration, cautiously abstains from averring that
he has carried on the business of a banker and has sustained
damage in that business through the fraudulent acts of the
defendant."

When this cause was before us at the last term, on a motion
for removal, we intimated that the complaint was defective,
calling attention to the decision in the *Bingham School case.*
We are quite sure that the learned counsel for plaintiff would
have amended his complaint in this respect, as he had ample
right and opportunity to do, if the facts had justified him in
doing so. In *Maxwell v. Hogg,* L. R., 2 Ch. App. (1866-'67),
305, the plaintiffs sought to enjoin defendants from publish-
ing a magazine, the name of which they claimed to have
acquired. They alleged that they had advertised it and made

expenditures in its preparation.    *Turner, L. J.,* said: "The first principle, which applies, not only to this case, but to every case in this Court, is, that the plaintiff must show some property right or interest in the subject-matter of his complaint.    The question, then, in that point of view, is whether the expenditure made by Mr. Maxwell upon his intended work of 'Belgravia,' and the advertisements issued by him from July to October, have created any such right of property in him as to entitle him to an injunction restraining another person from using the same title."    His conclusion that no such right is acquired is stated so strongly that we quote his language: "If it is to be considered as doing so, the consequence will be that, without having made any new publication at all, he might come to this Court, saying, 'I have advertised my intention to publish, in October, a given work under a given title, and nobody else shall publish a work under that title until I have had an opportunity of bringing my work before the public.'    He does not, by his advertisements, come under any obligations to the public to publish the work, and, therefore, the effect of holding the advertisements to give him a title would be that, without having given any undertaking or done anything in favor of the public, he would be acquiring a right against every member of the public to prevent their doing that which he himself is under no obligation to do and may never do."    *Lord Cairns* says: "The question, then, reduces itself to this: Can property of that character which is had in a trade-mark be acquired in a name before the vendible articles bearing the name have actually been put upon the market for the purpose of sale?"    The learned Justice concludes by saying that "All the definitions which have been given in this court of the nature of the right to protection in the case of trade-marks seem to me to be opposed to the idea that protection can be given where there has been no sale or offering for sale of the article to which the name is to be attached."    The bill was dismissed.    So, in *Civil Ser. Sup.*

*Association v. Dean,* 13 L. R. Ch. Div., 512, *Malins, V. C.,* . said: "An intimation by the association that they intended to open a shop for a particular purpose can give them no right to restrain anything which any other person may think fit to do." The same principle has been announced and enforced by the courts in this country. *K. M. Kaffer Fab v. P. K. Med. Co.,* 82 Fed., 321; *Jœger's San. Co. v. Le Boutillier,* 47 Hun., 521. In *Caswell v. Hazard,* 121 N. Y., 484, in an exhaustive opinion upon the subject, *Ruger, C. J.,* says: "The right to a trade-mark is derived from its appropriation and continual user, and becomes the property of those who first employ it and give it a name and reputation." *Kohler Manufacturing Co. v. Beeshore,* 59 Fed., 572. The authorities cited by plaintiff fully sustain its contention that "A man's name is his own property, and he has the same right to its use and enjoyment as he has to any other species of property." *Brown Chemical Co. v. Meyer,* 139 U. S., 540, and other cases. It is also true, as contended, that to enjoin the unlawful use of a man's name or his trade-mark it is not necessary to allege or show actual fraud. So far as the corporate name taken by plaintiff is concerned, it is too well settled to admit of controversy that, as said by this Court in the *Bingham School case, supra,* the mere incorporation does not confer an exclusive right to the name. While it is true that, under the provisions of our general incorporation law (Revisal, sec. 1137), no corporation will be chartered by the name of another corporation existing in this State, if the Legislature see fit, there is no reason why it may not charter more than one corporation of the same name. This is not a matter in which the State is concerned; and if it does so, the rights and liabilities of each corporation in respect to the use of its name will depend upon well-settled principles of law. If plaintiff, as it must do, relies upon the right to its name, as assimilated to that of a trade-mark, we have seen there must be an allegation that the name has been used to such an extent and in

such a manner as to confer a property right to it. Courts
of equity only interfere by injunction to protect property
rights when there is some substantial injury done or threat-
ened. They will not do so when the alleged right is uncer-
tain, speculative and may never become otherwise. In the
absence of any allegation that plaintiff has used its corporate
name or exercised its corporate powers in the manufacture,
purchase or sale of smoking tobacco, at Durham or elsewhere,
we find no ground upon which it may successfully invoke the
power of a court of equity to prevent defendant from con-
tinuing to do so. We have so far discussed the complaint
upon the theory that there was an allegation of plaintiff's
prior corporate origin to that of defendant. To prevent mis-
conception, it is proper to say that there is no such averment.
When a plaintiff comes into court asking injunctive relief, it
is a well-settled rule that there should be a full, fair, frank
statement of the essential facts upon which its right is based,
so that the court may see, upon demurrer, that it has a cause
of action. It would have been easy for plaintiff to have stated
the date of its incorporation and organization, and the date
upon which defendant began the manufacture of smoking
tobacco in Durham, or, at least, that it was subsequent to the
date of plaintiff's charter.

Plaintiff insists that, however this may be, the defendant
should be enjoined, because, being a New Jersey corporation,
it has never complied with the corporation laws of this State
nor become domesticated as a North Carolina corporation, as
required by law, and is not, therefore, authorized, but is ex-
pressly forbidden, to carry on business in Durham or else-
where in this State. The demurrer admits this to be true,
but defendant insists that by such failure to comply with the
statutes of this State a penalty is imposed, to be sued for by
the Attorney-General, and that plaintiff has no power to inter-
fere with it by means of a civil action. *Judge Thompson,* in
this connection, says: "When the facts do not otherwise entitle

the complaining party to relief, the fact that the defendant may, under a name similar to that of the plaintiff, be engaged in an unlawful undertaking—such as carrying on the business of life insurance in violation of the State law—will not entitle the plaintiff to have the defendant enjoined from using the plaintiff's name in such business, since the question whether the defendant is engaged in an unlawful business is collateral to the particular action, being a question more properly determined in a proceeding by the State against the offending body." 7 Corporations, sec. 8195. Every foreign corporation, before being permitted to do business in this State, is required to comply with the provisions of section 1194 of the Revisal, and for failing to do so it shall forfeit $500 to the State, etc. Similar statutes are found in many, if not all, of the States. The right of private persons or corporations to enforce these provisions, either by invalidating contracts made by such foreign corporations subject to the penalty, or by enjoining them, has been uniformly denied by the courts. The right of foreign corporations to do business in the State in violation of the statute "cannot be raised collaterally by private persons unless there be something in the statute, expressly or by necessary implication, authorizing them to do so." *Fritts v. Palmer,* 132 U. S., 282; *Columbus Insurance v. Walsh,* 18 Mo., 229. In *Wright v. Lee,* 4 S. D., 237, we find the principle universally adopted well stated. Referring to the status of a foreign corporation doing business in the State in violation of the statute, it is said: "The statute was designed to place foreign corporations, in respect to a knowledge of their powers, the object of their incorporation and the jurisdiction of our courts within the State over them, in the same position as domestic corporations. In the case either of domestic or foreign corporations the State names the conditions upon which they may do business. It does it in its sovereign capacity as the conservator of the rights and best interests of its citizens. The State, which alone can name

the conditions, can enforce their observance. * * * The wrong done in disregarding the law is against the State, and not against the individual. Transacting business in the State without compliance with the statutory conditions is a usurpation of power by the corporation, but with the State rests the right to elect whether it will acquiesce in such usurpation or dispute or prevent it." In *McGinnis v. B. & M. C. C. & S. M. Co.,* 29 Mont., 428 (at page 446), it is said: "Much argument in the appellant's brief is also devoted to the question whether or not the Amalgamated Company is engaged in doing business in this State in violation of the law, and whether it is a monopoly. * * * The plaintiff sues as a private citizen. He is not, as such, authorized to present through the medium of a civil action and try the issue whether the defendant Amalgamated Company is doing business in this State in violation of the law. A determination of this issue as an independent ground of relief must be had, if at all, by the State and in its own behalf, through the Attorney-General." *Wash. Mill Co. v. Bartlett,* 3 N. D., 138; *Tol. T. & L. Co. v. Thomas,* 33 W. Va., 566; 2 Morawitz Pr. Corp., sec. 665. The authorities are uniform to this effect. While the question has not heretofore been before this Court, the general principle has been recognized. *Railroad v. Newberry,* 133 N. C., 45; Womack Pr. Corp., 68, where the cases are collected. The wisdom of this rule is manifest. If, in the absence of express power to do so, private citizens or corporations were permitted to enforce penalties and forfeitures which the State has reserved to itself, confusion would result. The plaintiff insists that the statute shows that it is the policy of the State to prohibit foreign corporations coming into her borders without first complying with her laws. This is undoubtedly true, but the same statute shows that the State has prescribed the penalty for doing so, and reserved to herself its enforcement, and this excludes any other mode of doing so. It is not the policy of the State, so far as expressed by her

legislation, to prohibit foreign corporations from doing business here, but to prescribe the conditions upon which they may do so. If the Legislature shall in its wisdom prohibit this defendant or any other corporation from doing business in the State, it will be the duty of the courts to enforce obedience to the law when called upon in the manner prescribed by the statute. So long as it permits them to be here, either by compliance with the laws or as a matter of comity, they are entitled to have the law of the land administered so that they have equal protection and equal justice done them. We cannot make the law of "none effect" for even so desirable an object as fostering domestic corporations. Their safety, as well as the safety of the individual citizen, is dependent upon the due and orderly administration of the law as it is written. We have given to this record our anxious consideration, and the conclusion to which we have arrived is, as we intimated when the cause was first before us, that the complaint states no cause of action. Following the course pursued by this Court in *Harper v. Pinkston,* 112 N. C., 293, the action must be dismissed. We have not considered or discussed the exceptions regarding the proceeding before *Judge Biggs,* because, in the view which we take of the case, they are immaterial. The right to examine witnesses is based upon the statement in the complaint of a cause of action, or an application based upon affidavits to have such examination for the purpose of enabling the plaintiff to file its complaint. No such question is presented here. The motion of defendant is allowed and the action

Dismissed.

CLARK, C. J., dissenting: The defendant, a foreign corporation, was doing business in this State in violation of our laws. It is true that the $500 penalty prescribed for such violation (Revisal, sec. 1194) cannot be sued for by the plaintiff, and that a *quo warranto* could be brought only by the Attor-

ney-General or by his permission. If it further be conceded that the plaintiff had only recently been incorporated and had done no business when this action was brought, still it avers that it is prepared to do business and that the defendant is illegally doing business here, and, by using the same name with the plaintiff, will interfere with and injure its business. Under these circumstances it would seem clear that the legal corporation is entitled to the injunctive process of the court to protect it from interference by another corporation doing business here under the same name in violation of our laws.