CHARCOAL STEAK HOUSE OF CHARLOTTE, INC. v. LAWRENCE STALEY.

(Filed 16 December 1964.)

**1. Trademarks and Tradenames—**

Generic words and phrases are *publici juris* and may not be monopolized.

**2. Unfair Competition—**

If generic words or descriptive terms are used for so long or so exclusively by a particular business as to connote the business in the public mind, the use of such words by another business may be restrained as constituting unfair competition when, under the circumstances, their use tends to confuse the public and amounts to the selling of goods by one person as the goods of another, but, even so, another may use such words when he adds thereto his own name or other words creating a dissimilarity sufficient to preclude confusion in the public mind.

**3. Same—**

Plaintiff operated a restaurant under the name "Charcoal Steak House." Thereafter defendant instituted a business under the name of "Staley's Charcoal Steak House" with the word "Staley's" in letters larger than those of the rest of the tradename. *Held:* Defendant's tradename was sufficiently dissimilar to obviate public confusion, and, there being no evidence of bad faith or any attempt on defendant's part to deceive, either in his business sign or the location of the business, plaintiff is not entitled to enjoin the use by defendant of the tradename.

APPEAL by plaintiff from *Farthing, J.,* May 18, 1964 Schedule "A" Civil Session of MECKLENBURG.

In this action plaintiff seeks permanently to enjoin defendant from using the name Charcoal Steak House in Mecklenburg County and to have the court decree that plaintiff is entitled to the use of that name in that area, to the exclusion of defendant.

Plaintiff alleges that since November 11, 1955, it has operated in Charlotte an "elite restaurant" under the name Charcoal Steak House; that, as a result of advertising and public-relations promotion, it has created "a conscious connection in the public mind between the name Charcoal Steak House" and plaintiff's place of business; that on February 13, 1964, defendant erected upon a location four blocks from plaintiff's restaurant a sign reading "Coming Soon Staley's Charcoal Steak House"; that defendant seeks to take advantage of plaintiff's advertising, name, and reputation; that the name and the location chosen by defendant for his place of business in Charlotte will confuse the public; and that it will cause plaintiff irreparable damage "in both business and reputation." Answering, defendant alleges that for many years he has operated a steak house in Winston-Salem, under the

name Staley's Charcoal Steak House; that in his advertising he gives more prominence to the name Staley's than to the other three words in the name of his restaurant; that the name Charcoal Steak House is merely descriptive of the establishment, and Staley's identifies it. He prays that plaintiff's action be dismissed.

Plaintiff's evidence offered at the trial on the merits tends to show these facts: In 1955, it incorporated under the name Charcoal Steak House of Charlotte, North Carolina, and opened a restaurant at 1800 Morehead Street, Charlotte, where it erected a sign calling its place of business "Charcoal Steak House." It was not the first steak house in Charlotte; the Ranch House and the Steak House were in business there already. At the present time six restaurants in Charlotte have the words *steak house, house of steaks,* or *charcoal* in their trade names. In 1961, after plaintiff had been in business for six years, it added to its sign the word *Swain's* in smaller lettering. This sign, plaintiff's only one, has a white background with black lettering. Mr. Elbert Swain owns a controlling interest in plaintiff corporation. He controls, also, Swain's Charcoal Steak House in Raleigh; in Greensboro; in Columbia, South Carolina; and in Jacksonville, Florida. Throughout North Carolina there are a number of restaurants using the phrase *steak house* in their respective business names.

On February 13, 1964, defendant erected at a location approximately four blocks from plaintiff's place of business, at or near the intersection of Wilkinson Boulevard and West Morehead Street, a sign proclaiming "Coming Soon Staley's Charcoal Steak House." The sign has a solid black background with gold lettering, and the lettering in the word *Staley's* is larger than that in the other five words.

To show the efforts it has made since its incorporation to make the words *charcoal steak house* synonymous in the public mind with its place of business, plaintiff offered in evidence forty-one exhibits. Thirty-two of these show the words *charcoal steak house* to have been used exclusively in its advertising, promotion, correspondence, and business relationship with its customers, suppliers, and others. Nine exhibits show the word *Swain's* to have been used in conjunction with the words *charcoal steak house,* with *Swain's* being in print smaller than that of the predominating words *charcoal steak house.* At the close of plaintiff's evidence, defendant's motion for judgment as of nonsuit was allowed, and plaintiff appeals.

*Plumides and Plumides and Richard L. Kennedy for plaintiff.*
*Fleming, Robinson & Bradshaw for defendant.*

---

---

SHARP, J.   This appeal presents only one question: Taking all the evidence as true, does it entitle plaintiff to an injunction restraining defendant from using the words *charcoal steak house* in his business name?

We are concerned here with a trade name. "Whether the name of a (business) . . . is to be regarded as a trade-mark, a trade name, or both, is not entirely clear under the decisions. To some extent the two terms overlap, but there is a difference more or less definitely recognized, which is, that, generally speaking, the former is applicable to the vendible commodity to which it is affixed, the latter to a business and its good will." *American Foundries v. Robertson,* 269 U.S. 372, 380, 70 L. Ed. 317, 321, 46 S. Ct. 160, 162. At common law generic, or generally descriptive, words and phrases, as well as geographic designations, may not be appropriated by any business enterprise either as a tradename or as a trademark. Such words are the common property and heritage of all who speak the English language; they are *publici juris.* If the words reasonably indicate and describe the business or the article to which they are applied, they may not be monopolized. *Union Oyster House v. Hi Ho Oyster House,* 316 Mass. 543, 55 N.E. 2d 942; AMDUR, TRADE-MARK LAW AND PRACTICE 112 (1st ed. 1948); 52 Am. Jur., *Trademarks, Tradenames, and Trade Practices* §§ 57, 60 (1944); 87 C.J.S., *Trade-marks, Trade-names and Unfair Competition* §§ 33, 34 (1954); Annot., Protection of descriptive word or phrase as trademark or on the ground of unfair competition, L.R.A. 1918A, 961.

Notwithstanding this rule, equity will always protect a business from unfair competition and the public from imposition. *Cab Co. v. Creasman,* 185 N.C. 551, 117 S.E. 787. Unfair competition amounts to this: "One person has no right to sell goods as the goods of another, nor to do other business as the business of another, and on proper showing (one) will be restrained from so doing." *Dyment v. Lewis,* 144 Iowa 509, 513, 123 N.W. 244, 245, 26 L.R.A. (N.S.) 73, 79.

Although a generic word or a geographic designation cannot become an arbitrary trademark, it may nevertheless be used deceptively by a newcomer to the field so as to amount to unfair competition, *Cleveland Opera Co. v. Cleveland Civic Opera Ass'n.,* 22 Ohio App. 400, 154 N.E. 352, and the prohibition against any right to the exclusive use of such a word or designation has been modified by the "secondary meaning" doctrine. This was fashioned to protect the public from deception, *Surf Club v. Tatem Surf Club,* 151 Fla. 406, 10 So. 2d 554, and is but one facet of the law of unfair competition.

When a particular business has used words *publici juris* for so long or so exclusively or when it has promoted its product to such an extent

STEAK HOUSE *v.* STALEY.

that the words do not register their literal meaning on the public mind but are instantly associated with one enterprise, such words have attained a secondary meaning. This is to say, a secondary meaning exists when, in addition to their literal, or dictionary, meaning, words connote to the public a product *from a unique source.* It has been suggested, however, that when a descriptive word or phrase has come to mean a particular *entrepreneur,* the term *secondary meaning* is inaccurate because, in the field in which the phrase has acquired its new meaning, its so-called secondary meaning has become its primary, or natural, meaning. *G. & C. Merriam Co. v. Saalfield,* 198 F. 369 (6th Cir.).

The law will afford protection against the tortious appropriation of tradenames and trademarks alike. *American Foundries v. Robertson, supra* at 380, 70 L. Ed. at 321, 46 S. Ct. at 162. To establish a secondary meaning for either, a plaintiff must show that it has come to stand for his business in the public mind, that is, "that the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. Nat. Biscuit Co.,* 305 U.S. 111, 118, 83 L. Ed. 73, 78, 59 S. Ct. 109, 113. But even though generic, or descriptive, words, when used alone, have come to have a secondary meaning, "a competitor may nevertheless use them if he accompanies their use with something which will adequately show that the first person or his product is not meant." *Union Oyster House v. Hi Ho Oyster House, supra* at 544, 55 N.E. 2d at 943. For a full discussion of the legal principles and the collected cases, see Annot., Doctrine of secondary meaning in the law of trademarks and of unfair competition, 150 A.L.R. 1067 (1944).

In *Union Oyster House, supra,* the Massachusetts court held that the words *oyster house* are in common use in the English language and denote a restaurant in which the serving of oysters is featured. The court dismissed plaintiff's suit to enjoin defendant from using the words *oyster house* in its business name. The difference between that case and this one is only the difference between an oyster house and a steak house. Here, plaintiff's manager testified: "The term *steak house* means to me a place that features steaks. The term *charcoal steak* means to me how the steak is prepared or was prepared by the method of using charcoal in preparation." The manager's understanding is ours and, we believe, also that of the general public. The name Charcoal Steak House is no more original than it is unusual or fanciful; it is literally descriptive of the product which both plaintiff and defendant stress in their respective restaurants. How else could defendant describe his restaurant to the public, or plaintiff its? Throughout the country the term *charcoal steak house* is found in the name of so many restaurants

giving emphasis to steaks that we may take judicial notice of its meaning and common usage, even though, unlike *oyster house,* it has not yet been defined, *qua* noun, in dictionaries.

Plaintiff states in its brief: "It is uncontroverted . . . that the words *charcoal steak house* are in their primary sense descriptive, they are *publici juris,* and all the world may use them; but is is the contention of the plaintiff appellant that the words as used by it have come to have a secondary meaning in regard to its business within the area of Charlotte, Mecklenburg County, North Carolina." Undoubtedly this is an accurate statement of the law, so far as it goes, and of what plaintiff contends. Although plaintiff employed the name Charcoal Steak House in Charlotte before defendant came to town, it did not originate the name, nor was it the first to use it in the area. Merely to be the first to use a descriptive name, even if it acquires a secondary meaning, does not give the first user an unqualified right to engross it. Even if the words *charcoal steak house* had acquired a secondary meaning so as specifically to connote plaintiff's restaurant in Charlotte, plaintiff still would not be entitled to have defendant restrained from making *any* use whatever of words admittedly *publici juris.* All plaintiff could reasonably ask of the court is that defendant be required to do what he has already done, namely, so designate his restaurant as to prevent reasonably intelligent and careful persons from being misled. When defendant affixed his name, Staley's, to his identifying sign in letters larger than those of "Charcoal Steak House," he created a dissimilarity which should preclude any confusion culminating in injury to any of plaintiff's rights. *Surf Club v. Tatem Surf Club, supra.*

Nothing in the record suggests the probability that the public will confuse the two restaurants. Unfair competition is "the child of confusion." *Cleveland Opera Co. v. Cleveland Civic Opera Ass'n., supra.* The evidence fails even to hint at any bad faith or any attempt on defendant's part to deceive, either in his business sign or in his location. And, all the while, plaintiff remains at its old stand — surely its satisfied customers will be able to find their way back. Should they wend their way to defendant's restaurant, also, for the sake of variety or comparison, any loss to plaintiff will be *damnum absque injuria.* Within our competitive economy there is, in the Charlotte area, indeed "room for good service by both." *Bingham School v. Gray,* 122 N.C. 699, 30 S.E. 304. As Denny, J. (now C. J.), said in *Extract Co. v. Ray,* 221 N.C. 269, 273, 20 S.E. 2d 59, 61: "The test (of unlawful competition) is simple and lies in the answer to the question: Has plaintiff's legitimate business been damaged through acts of the defen-

dant's which a court of equity would consider unfair?" In this case the answer is, No.

The judgment of nonsuit is
Affirmed.