TWO WAY RADIO SERVICE, INC., A NORTH CAROLINA CORPORATION v. TWO WAY RADIO OF CAROLINA, INC., A NORTH CAROLINA CORPORATION

No. 29PA88

(Filed 28 July 1988)

**Trademarks and Trade Names § 1— corporate name—no right to exclusive use of "two way radio"**

The statutory prohibition against deceptively similar corporate names, N.C.G.S. § 55-12(c) (1982), did not extinguish the common law rule proscribing exclusive appropriation of the right to use a "descriptive phrase" in a trade name. Therefore, plaintiff did not, by its prior incorporation under a name that included the generally descriptive phrase "two way radio," acquire a right to the use of that phrase in its corporate name to the exclusion of that right in defendant and others subsequently incorporated.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of an unpublished opinion of the Court of Appeals, reported at 88 N.C. App. 314, 366 S.E. 2d 870 (1987), which affirmed a judgment entered by *Huffman, J.,* at the 19 January 1987 civil term of District Court, STANLY County, enjoining defendant from doing business

under the name "Two Way Radio of Carolina, Inc." Heard in the Supreme Court 11 May 1988.

*Michael W. Taylor for plaintiff-appellee.*

*Weinstein and Sturges, P.A., by Michel C. Daisley and Hugh B. Campbell, Jr., for defendant-appellant.*

WHICHARD, Justice.

The issue is whether the statutory prohibition against "deceptively similar" corporate names, N.C.G.S. § 55-12(c) (1982), extinguishes the common law rule proscribing exclusive appropriation of the right to use a "descriptive phrase" in a trade name. We hold that the common law rule survives.

Both plaintiff and defendant engage in the business of operating, selling, leasing, and maintaining radio-telephonic communication equipment. Both do business in Mecklenburg and Stanly counties. Plaintiff began doing business under the name "Two Way Radio Service" in 1959 and incorporated under that name in 1961. Defendant has done business under the names "Two Way Radio of Charlotte" and "Two Way Radio of Carolina" since 1956. In 1965 Defendant incorporated under the name "Two Way Radio of Carolina, Inc."

Plaintiff brought this action seeking to enjoin defendant from doing business under the name "Two Way Radio of Carolina, Inc." The complaint alleges that "[d]efendant's name is deceptively similar to plaintiff's name in violation of GS 55-12(c)." It further alleges:

6. Since September, 1984, defendant has listed its name and telephone number in the Albemarle-Badin-New London-Oakboro Telephone Directory, the primary telephone directory for Stanly County, with the result that telephone calls from customers seeking to do business with plaintiff have mistakenly been placed to defendant, resulting in continuing inconvenience, loss of business and other losses to plaintiff. A copy of the relevant page of the telephone directory is attached hereto as Exhibit "A."

7. Irreparable injury, loss, and damage will result to plaintiff if defendant continues to do business under its present name which is deceptively similar to that of plaintiff.

Defendant answered, denying that the names are deceptively similar. It admitted that it "has listed its name and telephone number in various telephone directories including the Albemarle-Badin-New London-Oakboro Telephone Directory," but denied that this resulted in calls intended for plaintiff being mistakenly made to defendant or in inconvenience and loss to plaintiff. It also denied that plaintiff will suffer irreparable injury, loss, and damage if defendant continues to do business under its present name.

Plaintiff moved for summary judgment and supported its motion with an affidavit from Raymond J. Miller, its president since its incorporation in 1961. The affidavit swore to the truth of the allegations of the complaint, then stated:

5. Two examples of the inconvenience and confusion caused by defendant's name being deceptively similar to plaintiff's name of which I have personal knowledge are as follows:

A. Approximately two years ago, Southeastern Materials, Inc. mistakenly sent to defendant a check intended for plaintiff in the amount of approximately $700.00 in payment for some equipment purchased from plaintiff. Defendant deposited the check, and it took great effort and six months of time on plaintiff's part to recover the money from defendant.

B. In September, 1985, W. L. McIver, Jr., Director of Telecommunications at the University of North Carolina Center for Public Television in Chapel Hill, was trying to contact me regarding the possible use of a frequency in the Charlotte area being used by a customer of plaintiff. Mr. McIver told me that every time he tried to get plaintiff's telephone number, he was given that of defendant by information and had a hard time convincing information that there was another corporation in Albemarle different from defendant.

Plaintiff later filed a further affidavit from Miller in which Miller averred that plaintiff had received a check from Stanly County, payable to plaintiff, which was intended for defendant. He further averred that a customer had sent a check, intended for plaintiff, to defendant. Finally, he averred that a tabulation sheet for bids "on the Stanly County fire system communications"

contained markings indicating confusion between the two firms on the part of people in Stanly County.

Defendant initially filed a responsive document labeled "motion," in which it "moved" that plaintiff's motion for summary judgment be denied on the ground that " 'Two-Way Radio' is a generic term and is not subject to the provisions of N.C.G.S. Section 55-12(c)." Defendant supported its "motion" with an affidavit from its corporate secretary which averred, in pertinent part, that defendant or its predecessor has continuously used the name "Two-Way Radio" since October 1956 "in commerce in North Carolina and in Stanley [sic] County."

Defendant subsequently filed its own motion for summary judgment. It again filed a supporting affidavit from its corporate secretary averring that it or its predecessor "has been continuously using the name 'Two Way Radio' since October, 1956, in the Stanly County, North Carolina area." The affidavit further averred:

> 7. Attached . . . are copies of advertisements obtained from various trade magazines which clearly show the frequent and common usage of the word [sic] "Two Way Radio" and "2-Way Radio" in both describing a product, a system of communication, and the name of other corporations throughout the country which use the term "Two Way Radio" as part of their corporate name.

Defendant attached to the affidavit advertisements containing language such as "2-Way Radio," "Two-Way Radios" or "Two-Way Radio Service."

Plaintiff responded by filing a further affidavit from Miller, its president, in which he averred:

> 3. The business [plaintiff's] was incorporated in 1961 and has been in continuous operation since that time. He never heard of another business with "Two Way Radio" as the first words in its name before the incorporation of plaintiff.

> 4. Several other businesses in Mecklenburg County use the term "2-Way Radio" in their names, but they do so with the distinguishing use of other names, such as surnames, before the term, and they do not spell out the word "Two"

but instead use the Arabic numeral. For example, some of the names are "Regency 2-Way Radio," "Johnson Professional 2-Way Radio Systems" and "Smith Frank 2-Way Radio Sales & Service." A copy of the relevant yellow page of the 1984 Charlotte Southern Bell Telephone Directory is attached.

5. No confusion has ever arisen to his knowledge between plaintiff corporation and the corporations referred to in paragraph 4. above which use the term "2-Way Radio" prefaced by distinguishing words.

The district court granted plaintiff's motion for summary judgment and enjoined defendant from doing business under the name Two Way Radio of Carolina, Inc., "so as to prevent reasonably intelligent and careful persons from being misled." The Court of Appeals affirmed in an unpublished opinion. It acknowledged that " 'two way radio' is . . . a generic, descriptive term" and that "a generic term descriptive of a type of business [cannot] be monopolized as a trade name" (citing *Steak House v. Staley*, 263 N.C. 199, 203, 139 S.E. 2d 185, 188 (1964) ). It concluded, however, that the case is not controlled by the common law of unfair competition, but by N.C.G.S. § 55-12(c), which proscribes "deceptively similar" corporate names. N.C.G.S. § 55-12(c) (1982). The court reached this conclusion by construing N.C.G.S. § 55-12(c) in light of administrative guidelines published by the Secretary of State, which would now prohibit allowance of two corporate names as similar as plaintiff's and defendant's (citing N.C. Admin. Code tit. 18, r. 4.0503(a), (b) (Sept. 1987) ). It determined that pursuant to these guidelines the names were deceptively similar, and it held that the injunction thus was properly granted.

On 9 March 1988 we allowed defendant's petition for discretionary review. We now reverse.

As in *Steak House*, "[w]e are concerned here with a trade name." *Steak House*, 263 N.C. at 201, 139 S.E. 2d at 187. In *Steak House*, we set forth the common law regarding exclusive appropriation in trade names of generic or generally descriptive[1] words and phrases:

---

1. Modern trademark law distinguishes between generic and descriptive terms. *See* 1 J. McCarthy, *Trademarks and Unfair Competition* § 11.1 (2d ed. 1984 &

> At common law generic, or generally descriptive, words and phrases, as well as geographic designations, may not be appropriated by any business enterprise either as a tradename or as a trademark. Such words are the common property and heritage of all who speak the English language; they are *publici juris*. If the words reasonably indicate and describe the business or the article to which they are applied, they may not be monopolized.

*Id.* While cases applying this rule in the context of corporate names are rare, applicability of the rule in this context is generally recognized. *See* Annot., "Protection of Business or Trading Corporation Against Use of Same or Similar Name by Another Corporation," 115 A.L.R. 1241, 1244 (1938); *Umpqua Broccoli Exch. v. Umpqua Valley Broccoli Growers*, 117 Ore. 678, 685-87, 245 P. 324, 327 (1926).

A well established exception to this rule applies when the descriptive phrase in question has acquired "secondary meaning." As stated in *Steak House v. Staley*:

> When a particular business has used words *publici juris* for so long or so exclusively or when it has promoted its product to such an extent that the words do not register their literal meaning on the public mind but are instantly associated with one enterprise, such words have attained a secondary meaning. This is to say, a secondary meaning exists when, in addition to their literal, or dictionary, meaning, words connote to the public a product *from a unique source*. It has been suggested, however, that when a descriptive word or phrase has come to mean a particular *entrepreneur*, the term *secondary meaning* is inaccurate because, in the field in which the phrase has acquired its new meaning, its so-called secondary meaning has become its primary, or natural, meaning.

263 N.C. at 201-02, 139 S.E. 2d at 187. Here, however, plaintiff neither alleges, nor forecasts evidence tending to prove, that the phrase "two way radio" has acquired a secondary meaning—a

---

Supp. 1987). Because we hold that the phrase "two way radio" cannot be exclusively appropriated because it is generally descriptive, we need not decide whether the phrase meets the more restrictive test of genericness. *See id.*

meaning signifying a producer rather than a product. *Id.* We thus are concerned only with the rule, not the exception.

The phrase "two way radio" clearly is "literally descriptive" of the product and service provided by the litigants; it is "no more original than it is unusual or fanciful." *Id.* at 202, 139 S.E. 2d at 188. The advertisements from trade magazines attached to the affidavit of defendant's corporate secretary demonstrate, without contradiction in the record, the commonness of use of the phrase "two way radio" or "2-way radio" in the names of businesses operating around the country. Indeed, plaintiff does not deny—and the Court of Appeals conceded—that the phrase is generally descriptive. Nothing else appearing, then, the common law rule applies, and plaintiff may not appropriate the phrase to its exclusive use. *Id.* at 201, 139 S.E. 2d at 187.

Plaintiff contends, however, that N.C.G.S. § 55-12 governs to the exclusion of the common law of trade names. This statute provides: "The corporate name shall not . . . be the same as, or deceptively similar to, the name of any domestic corporation or of any foreign corporation authorized to transact business in this State . . . ." N.C.G.S. § 55-12(c) (1982). It also provides for enforcement of the foregoing provision by injunction: "The use by a corporation of a name in violation of this section may be enjoined notwithstanding the filing of its articles by the Secretary of State." N.C.G.S. § 55-12(j) (1982). Thus, the issue is whether these statutes supersede the common law of trade names, or whether, instead, the common law of trade names survives to inform the interpretation and application of these statutes. We hold the latter.

Several commentators have indicated that disputes concerning corporate names should be resolved in light of common law trademark or trade name principles. Russell Robinson states:

> Actually, the statutory prohibition against identical or deceptively similar corporate names *is merely supplementary to the common law of unfair competition as it applies to trademarks and trade names.* Consequently, the North Carolina Supreme Court has held, and the Business Corporation Act expressly recognizes, that a company which has acquired a proprietary interest in a trade name can enjoin its infringement by the use of a confusingly similar name notwithstanding the fact that the Secretary of State may have

permitted an incorporation under the infringing name; and the Act further provides that the issuance of a charter to any domestic corporation does not confer any trademark or trade name rights or constitute a defense to an infringement action. The Court has further held, though, that a corporate name (i.e., a trade name) is like a trademark to the extent that a proprietary interest therein can be acquired only by adoption and continuous use; and therefore, no infringement can be established without an allegation and proof of continuous and exclusive use. It is to be expected that other trademark principles, such as the doctrine of secondary meaning in connection with surnames or descriptive terms, will also be applied in cases alleging a corporate name infringement.

R. Robinson, *North Carolina Corporation Law and Practice* § 4-1, at 52 (3d ed. 1983) (footnotes omitted) (emphasis added).

An A.L.R. annotation reflects the general law:

The right of a corporation to protection against the use of the same or a similar name by another corporation is intimately connected with the right to protection for a trademark or a tradename, and the right to protection against unfair competition. Indeed, in a great many instances, . . . the principles to be applied in the two classes of cases are practically identical.

Annot., "Protection of Business or Trading Corporation Against Use of Same or Similar Name by Another Corporation," 66 A.L.R. 948, 950 (1930). Speaking directly to the issue here, the annotation notes that "[u]nder the English statute [prohibiting similar names], after the companies have once been registered, the statute no longer applies, and an action subsequently brought, to enjoin the use of the name of one of the companies, *is governed by common-law rules." Id.* at 951 (emphasis added).

Similarly, a leading treatise states that "[p]rotection against the confusing use of commercial and corporate names is afforded upon the same basic principles as apply to trademarks in general," and this protection is circumscribed by "the same limitations and conditions as are trademarks," including the rules applicable to descriptive names. 1 J. McCarthy, *Trademarks and Unfair Competition* § 9:1, at 300-01 (2d ed. 1984 & Supp. 1987).

Our own statutory scheme governing the issuance of corporate names contains a provision which suggests that the General Assembly did not intend to preempt the common law of trademarks and trade names. This provision states:

> The issuance of a corporate charter to any domestic corporation shall not authorize the use in this State of the corporate name in violation of the rights of any third party under the federal Trademark Act, the Trademark Act of this State, *or the common law*; and the issuance of such charter shall not be a defense to an action for violation of any such rights.

N.C.G.S. § 55-12(k) (1982) (emphasis added). While this provision only prohibits a corporation from using the issuance of its charter as a shield to defend against violations of trademark law, it would seem—in spirit and intent—to prohibit plaintiff's use of its charter as a sword to pierce defendant's common law right to nonexclusive use of a generally descriptive phrase in a trade name.

Finally, two prior decisions of this Court have employed common law trademark or trade name principles in adjudicating the rights to corporate names. First, we employed trademark principles in *Bingham School v. Gray*, 122 N.C. 699, 30 S.E. 304 (1898), a case decided prior to enactment of N.C.G.S. § 55-12(c), in holding that the act of incorporating did not create an exclusive right to the use of a surname. Second, in *Tobacco Co. v. Tobacco Co.*, 145 N.C. 367, 59 S.E. 123 (1907), we stated:

> The law having authorized the selection of a name, and having declared the name so selected to be the name of the corporation, we see no reason why the law should not protect the corporation in the use of that name, *upon the same principle and to the same extent that individuals are protected in the use of trademarks.* Hence it necessarily follows that corporations, in the exercise of discretionary powers conferred by the statute, *must so exercise them as not to infringe upon the established legal rights of others.*

*Id.* at 374, 59 S.E. at 126 (quoting *Holmes v. Holmes*, 37 Conn. 278, 9 Am. Rep. 324 (1870)) (emphasis added).

While not dispositive, the foregoing authorities are instructive; in light thereof, and in the absence of clear legislative

guidance to the contrary, we conclude that the N.C.G.S. § 55-12(c) proscription against deceptively similar corporate names remains circumscribed by the salutary common law principle that generally descriptive phrases may not be exclusively appropriated in a trade name. *Steak House v. Staley*, 263 N.C. 199, 139 S.E. 2d 185. The trial court thus erred in enjoining defendant from doing business under a name which included the generally descriptive phrase "two way radio," and the Court of Appeals erred in failing to reverse the trial court. By choosing a generally descriptive phrase as a part of its corporate name, plaintiff assumed the risk that some consumers might confuse it with other producers. "[O]ne competitor will not be permitted to impoverish the language of commerce by preventing his fellows from fairly describing their own goods." *Bada Co. v. Montgomery Ward & Co.*, 426 F. 2d 8, 11 (9th Cir. 1970), *cert. denied*, 400 U.S. 916, 27 L.Ed. 2d 155 (1970). We thus hold that plaintiff did not, by its prior incorporation under a name that included the generally descriptive phrase "two way radio," acquire a right to the use of that phrase in its corporate name to the exclusion of that right in defendant and others subsequently incorporated.

For the foregoing reasons, the decision of the Court of Appeals upholding summary judgment for plaintiff is reversed. The case is remanded to the Court of Appeals for further remand to the District Court, Stanly County, for entry of summary judgment for defendant.

Reversed and remanded.