Johnson & Morris PLLC v. Abdelbaky & Boes, PLLC, 2016 NCBC 76.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 6151

JOHNSON & MORRIS PLLC, d/b/a )
CAROLINA PEDIATRIC DENTISTRY, )
      Plaintiff, )
      )
     v. )
      )
ABDELBAKY & BOES, PLLC, d/b/a )
CAROLINA ORTHODONTICS AND )
CHILDREN'S DENTISTRY a/k/a )
CAROLINA ORTHODONTICS AND )
PEDIATRIC DENTISTRY a/k/a )
CAROLINA PEDIATRIC DENTISTRY )
AND ORTHODONTICS a/k/a )
CAROLINA ORTHODONTICS AND )
CHILDRENS DENTISTRY a/k/a )
CAROLINA ORTHODONTIC AND )
PEDIATRIC DENTISTRY a/k/a )
CAROLINA PEDIATRIC DENTISTRY )
AND ORTHO a/k/a CAROLINA )
ORTHO AND PEDO DENTISTRY, )
      Defendant. )

**ORDER ON MOTION FOR
PRELIMINARY INJUNCTION**

THIS MATTER comes before the Court on Plaintiff's Motion for Preliminary Injunction ("Motion"). In support of the Motion, Plaintiff and Defendant filed several affidavits and other evidentiary materials. On September 21, 2016, the Court held a hearing on the Motion.

THE COURT, having considered the Motion, briefs in support of and in opposition to the Motion, arguments of counsel, the record evidence filed by the parties, and other appropriate matters of record, FINDS and CONCLUDES, in its discretion, that the Motion should be DENIED for the reasons below.

.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

1.　　Plaintiff Johnson & Morris PLLC ("Plaintiff") operates Carolina Pediatric Dentistry ("CPD" or "Carolina Pediatric Dentistry") at an office location in Raleigh, North Carolina. CPD is a specialized pediatric dentistry practice and treats only children.[1] Dr. E. LaRee Johnson, D.D.S. ("Dr. Johnson") is founder and principal of CPD and operates the practice with her partner, Dr. Clark Morris ("Dr. Morris"). Drs. Johnson and Morris are both board certified specialists in pediatric dentistry. Plaintiff began using the name "Carolina Pediatric Dentistry" in approximately August 2003, and has been doing business as CPD since at least March 2004. (Ver. Compl. ¶ 9.) Plaintiff registered the CPD name on March 4, 2015, with the Wake County Register of Deeds. (*Id.* Ex. 1.) Plaintiff presented evidence that it has patients within Wake, Durham, and Orange counties, as well as other counties within an approximately seventy-five (75) mile radius around Plaintiff's office (the "Market Area"). (*Id.* ¶ 1; *see also* Morris Aff. ¶¶ 6–8, Exs. A, B.)

---

[1]The American Academy of Pediatric Dentistry describes the specialization of pediatric dentistry as follows:

Pediatric dentistry is an age-defined specialty that provides both primary and comprehensive preventive and therapeutic oral health care for infants and children through adolescence, including those with special health care needs. To become a pediatric dental specialist, a dentist must satisfactorily complete a minimum of 24 months in an advanced education program accredited by the Commission on Dental Accreditation of the American Dental Association (ADA). Such programs "must be designed to provide special knowledge and skills beyond the DDS or DMD training. . ." The curriculum of an advanced program provides the dentist with necessary didactic background and clinical experiences to provide comprehensive primary oral health care and the services of a specialist. Pediatric dentists provide care, conduct research, and teach in a variety of clinical and institutional settings, including private practice and public health. They work in coordination with other health care providers and members of social disciplines for the benefit of children.

AMERICAN ACADEMY OF PEDIATRIC DENTISTRY REFERENCE MANUAL, *Overview*, 2 (Oct. 10, 2016), http://www.aapd.org/media/policies_guidelines/intro1.pdf (citation omitted).

.

2.      Dr. Johnson has received numerous honors and awards during her years of practice under the CPD name. She is also a dental instructor who gives presentations to the public, hospital staff, dental students, and licensed dentists on topics relevant to pediatric dentistry. (Johnson Aff., Ex. 1; Johnson 2nd Aff. ¶ 18.) It is Dr. Johnson's practice to showcase CPD's logo, practice name, and web address during her presentations. (Johnson 2nd Aff. ¶ 18.) Orthodontists, dentists, and pediatricians regularly make referrals to CPD and Dr. Johnson. (Ver. Compl. ¶ 13; Hamp Aff. ¶ 3; Johnson 2nd Aff. ¶ 12.)

3.      Plaintiff claims to be "the exclusive owner of all rights in and to the CAROLINA[2] name with respect to pedodontics"[3] in the Market Area. (Ver. Compl. ¶16.) In late 2006, Plaintiff attempted to register the name Carolina Pediatric Dentistry with the United States Patent and Trademark Office ("USPTO"). (Haas Decl. ¶ 45, Ex. A.) The USPTO refused registration on the principal registry because "the mark is primarily geographically descriptive of the origin of applicant's goods and/or services." (*Id.*) Plaintiff has not registered Carolina Pediatric Dentistry as a trademark with the North Carolina Secretary of State.

---

[2]In the Verified Complaint and in its briefing, Plaintiff capitalizes the word "CAROLINA." The record evidence shows, however, that Plaintiff does not capitalize the name "Carolina" in its use within the name "Carolina Pediatric Dentistry." Rather, it appears Plaintiff has capitalized Carolina merely as a means of emphasizing that it is the Carolina name that is of significance in identifying or differentiating its brand. Accordingly, the Court considers Plaintiff's claims with regard to the use of the word "Carolina," and not "CAROLINA," and will use the all-capitalized spelling only when quoting from the Verified Complaint or Plaintiff's brief.

[3]"Pedodontics" apparently is another name used for the specialized practice of children's dentistry. DICTIONARY.COM, *Pedodontics*, www.dictionary.com/browse/pedodontics (last visited Oct. 10, 2016).

.

4.	Defendant Abdelbaky & Boes, PLLC ("Defendant") operates a four office practice offering general family dental services under the name Triangle Family Dentistry. In 2015, Defendant merged with another dental and orthodontic practice operated by Dr. Jesse Arbon. (Abdelbaky Decl. ¶ 5.) Following the merger, Defendant began offering orthodontia and dentistry services for children at offices located in Cary and Fuquay Varina, in Wake County, North Carolina.[4] Defendant employs a board certified pediatric dental specialist, Dr. Jordan Olsen, at the Cary and Fuquay Varina offices. The Cary and Fuquay Varina offices are located approximately 25 and 30 miles, respectively, from Plaintiff's office in Raleigh (*Id.* ¶ 14.)

5.	In November 2015, Defendant began operating the Cary and Fuquay Varina offices under the name "Carolina Orthodontics and Pediatric Dentistry." (*Id.* ¶ 9; Arbon Decl. ¶ 6.) Drs. Abdelbaky and Arbon chose the name "Carolina Orthodontics and Pediatric Dentistry" because they "wanted a new name to describe the portion of the practice being run by Dr. Arbon" by identifying the services he provided, and because it was a "name that was universal" in describing the two office locations. (Abdelbaky Decl. ¶ 7; Arbon Decl. ¶ 5.) Defendant investigated prior to selecting the name to make certain no one else was using the name "Carolina Orthodontics and Pediatric Dentistry." (Abdelbaky Decl. ¶ 8.) Defendant markets the Cary and Fuquay Varina offices within an approximate 10-mile radius of those

---

[4]Defendant has its other two offices in Wake Forest and Morrisville, North Carolina. Those offices operate under the name Triangle Family Dentistry.

.

offices, and the vast majority of the patients for those offices generally live in Cary, Morrisville, and Apex. (*Id.* ¶ 13; Abdelbaky Dep. 49–50, 52, Ex. 13.)

6.      On or about March 15, 2016, Plaintiff sent a letter to Defendant to "object to the use of Carolina Orthodontic and Pediatric Dentistry and any similar assumed names and/or trademark" by Defendant. (Ver. Compl. ¶ 23, Ex. 10.) In an effort to resolve the dispute, Defendant changed the name of its practices at the Cary and Fuquay Varina offices to "Carolina Orthodontics and Children's Dentistry."[5] On or about March 23, 2016, Defendant registered the assumed names "Carolina Orthodontics and Children's Dentistry" and "Carolina Orthodontics and Childrens Dentistry" with the Wake County Register of Deeds. (*Id.* ¶ 18, Ex. 6.)

7.      Plaintiff alleges that "the change in [Defendant's] name to 'Carolina Orthodontics and Children's Dentistry' does not alleviate [Plaintiff's] concerns given the continued prominent use of CAROLINA in connection with a pedontics [sic] practice in the Region." (Ver. Compl. ¶ 24.) Plaintiff claims that Defendant adopted the Carolina name "with the specific intent of confusing consumers into believing that Defendant's practice is affiliated with Plaintiff, and otherwise attempting to unlawfully appropriate for itself the goodwill that Plaintiff has built up over many years under the CAROLINA name. . . ." (*Id.* ¶ 2.) Plaintiff alleges two instances of confusion among consumers. Plaintiff received two telephone calls from patients "who appeared to believe that Plaintiff had opened a new office location." (*Id.* ¶ 22.) In

---

[5]As of the date of the hearing on the Motion, Defendant was still displaying a banner outside of its Cary office bearing the name "Carolina Orthodontic and Pediatric Dentistry."

.

addition, while giving a presentation in Cary in March 2016, Dr. Johnson overheard other dentists expressing the belief that she had recently opened a Cary office. (Johnson Aff. ¶ 28.)

8.    Record evidence shows that there are numerous businesses in Wake County and in North Carolina using the word Carolina in their names. These businesses include dental offices that treat children. (*See generally* Haas Decl. ¶¶ 8–43.) However, these businesses do not specialize in pedodontics or offer specialized children's dental services. (Ver. Compl. ¶ 15; Pl.'s Reply Supp. Mot. Prelim. Inj. 3.)

9.    On May 6, 2016, Plaintiff filed its Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction. The Verified Complaint makes claims for common law "unfair competition"[6] (Ver. Compl. ¶¶ 39–42), and for unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (*Id.* ¶¶ 43–49.) The Motion seeks, in pertinent part, an order "temporarily and preliminarily enjoin[ing] [Defendant] from using the name CAROLINA in connection with the offering or provision of specialized children's dental services within the Region including, but not limited to, as its offices in Wake County, as well as in connection with its websites and web addresses."[7] (Pl.'s Mot. Pre. Inj. ¶ 2.)

10.    In the Verified Complaint, Plaintiff moved for both a temporary restraining order and preliminary injunction, but in its brief argues only in support

---

[6]The Court interprets Plaintiff's common law unfair competition claim as one for infringement of trademark.
[7]Following the hearing, Defendant's counsel notified the Court that it has ceased using the website "carolinaorthopedo.com."

.

of the request for preliminary injunction. At the hearing, Plaintiff's counsel clarified that it is seeking a preliminary injunction. Accordingly, the Court considers only Plaintiff's request for preliminary injunction. The Motion was fully briefed, the court has heard arguments, and it is now ripe for disposition.

<u>DISCUSSION</u>

11. A preliminary injunction "is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation." *Ridge Cmty. Inv'rs, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). Its issuance is a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities. *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983) (citation omitted). The Court may grant a preliminary injunction "only (1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Id.* at 401, 302 S.E.2d at 759–60. A trial court "in exercising [its] discretion should engage in a balancing process, weighing potential harm to the plaintiff if the injunction is not issued against the potential harm to the defendant if injunctive relief is granted." *Kaplan v. Prolife Action League*, 111 N.C. App. 1, 16, 431 S.E.2d 828, 835 (1993), *rev'd on other grounds*, 351 N.C. 159, 522 S.E.2d 577 (1999).

A. *Likelihood of Success on the Merits.*

.

12. In support of the preliminary injunction, Plaintiff has argued only the merits of its claim for unfair competition through trademark infringement, and the Court will address only that claim in determining the likelihood of success on the merits. Plaintiff contends that Defendant's use of the trade name "Carolina Orthodontics and Children's Dentistry" constitutes common law trademark infringement upon Plaintiff's exclusive right to use Carolina as associated with any term(s) denoting a specialized pediatric dentistry practice located within the Market Area. (Ver. Compl. ¶ 16; Pl.'s Br. Supp. Mot. Prelim. Inj. 3.)

13. "The fundamental question in cases of trade-mark or unfair competition, and in fact the common law of trade-marks is but a part of the broader law of unfair competition, is whether the public is being misled and deceived so that a defendant is in effect taking the advantage of the good will and business reputation that a complainant has built up through service or advertising or in any manner regarded as lawful and proper." *Carolina Aniline & Extract Co. v. Ray*, 221 N.C. 269, 273, 20 S.E.2d 59, 61–62 (1942) (internal citation omitted). Unfair competition involves "[o]ne person [who] has no right to sell goods as the goods of another, nor to do other business as the business of another, and on proper showing (one) will be restrained from so doing." *Charcoal Steak House of Charlotte, Inc. v. Staley*, 263 N.C. 199, 201, 139 S.E.2d 185, 187 (1964) (quoting *Dyment v. Lewis*, 144 Iowa 59, 513, 123 N.W. 244, 245 (1909)). A common law claim for trademark infringement under North Carolina law is analyzed under essentially the same standards as a federal Lanham Act claim regarding an unregistered trademark. *See* N.C. Gen. Stat. § 80-1.1;

.

*Grayson O Co. v. Agadir Int'l LLC*, 2015 U.S. Dist. LEXIS 153900, at *5–6 (W.D.N.C. Nov. 13, 2015). In order to establish a claim for trademark infringement, a plaintiff must show: (1) that it has a valid and protectable trademark, and (2) that the defendant has used an identical or similar mark that is likely to cause confusion among consumers. *B&J Enter., v. Giordano*, 329 Fed. Appx. 411, 416, 2009 U.S. App. LEXIS 10564, at *13 (4th Cir. May 18, 2009); *Windsor Jewelers, Inc. v. Windsor Fine Jewelers, LLC*, 2009 NCBC LEXIS 19, at *14 (N.C. Super. Ct. Feb. 16, 2009). The Court will first consider whether Plaintiff has demonstrated a likelihood of success in establishing that it has a valid and protectable trademark.[8]

14.    "Where a mark is not registered, the plaintiff has the burden of proving that its mark is a valid trademark." *Trs. of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 742 (S.D.N.Y. 1997). Courts use four categories of marks to analyze the strength of a trademark in the marketplace and the degree of protection to which it is entitled: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary or fanciful." *Id.* at 742–43; *B&J Enter.,* 329 Fed. Appx. at 417, 2009 U.S. App. LEXIS 10564 at *14. "Generic marks are not protectable. Descriptive terms are protectable only with evidence of secondary meaning. Suggestive, arbitrary, and fanciful marks are eligible for protection without proof of secondary meaning." *Trs. of Columbia Univ.*, 964 F. Supp. at 743.

---

[8] The Court notes that Plaintiff has not claimed that the stylized logos used by the two practices are similar or likely to be confused with each other.  In fact, the logos clearly are dissimilar.  (Haas Decl. ¶¶ 4, 6.)

.

15.     Defendant contends that Plaintiff does not have trademark rights in the word Carolina, which is a geographically descriptive term for which Plaintiff has not made a sufficient showing of secondary meaning. At the hearing, Plaintiff conceded that the word Carolina, on its own, is generic or descriptive in nature and is not protectable as a trademark. There also does not seem to be any dispute that Plaintiff does not have a protectable interest in the words "pediatric dentistry," which merely describe a type of service and are generic. *George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 394 (4th Cir. 2009). Instead, Plaintiff contends that its use of the name Carolina Pediatric Dentistry has caused the word Carolina to acquire a secondary meaning in the Market Area when used in conjunction with other words or terms that refer to a dental practice that provides pediatric dental services. At the hearing, Plaintiff's counsel confirmed that Plaintiff contends that Defendant cannot use as a name for its pediatric dental practice any name that begins with Carolina and contains any other words that suggest Defendant is a children's dentistry practice.

    a.  Secondary Meaning Doctrine.

16.     Plaintiff contends that the record evidence establishes that its use of the word Carolina, although geographically descriptive, has acquired a secondary meaning when used to describe a dental practice that provides pediatric dentistry in the Market Area.[9] (Pl.'s Br. Supp. Mot. Prelim. Inj. 10.)

---

[9] Defendant contends that the proper focus is on whether the mark has obtained a secondary meaning in Defendant's market area, and not the Market Area. Defendant claims the relevant market area is a 10-mile radius around each of the two Carolina Orthodontics and Children's Dentistry offices. (Def.'s Br. Opp. Mot. Prelim. Inj. 10–11.) For purposes of determining this motion, the Court will use the Market Area as defined by Plaintiff.

.

17.    The secondary meaning doctrine is derived from the idea that "[a]lthough a generic word or a geographic designation cannot become an arbitrary trademark, it may nevertheless be used deceptively by a newcomer to the field as to amount to unfair competition. . . ." *Charcoal Steak House*, 263 N.C. at 201, 139 S.E.2d at 187.

> When a particular business has used words *publici juris* for so long or so exclusively or when it has promoted its product to such an extent that the words do not register their literal meaning on the public mind but are instantly associated with one enterprise, such words have attained a secondary meaning. This is to say, a secondary meaning exists when, in addition to their literal, or dictionary, meaning, words connote to the public a product *from a unique source* . . . . To establish a secondary meaning for either, a plaintiff must show that it has come to stand for his business in the public mind, that is, that the primary significance of the term in the minds of the consuming public is not the product but the producer.

*Id.* at 201–02, 139 S.E.2d at 187 (citations omitted); *see also B & J Enters.*, 329 Fed. Appx. at 417, 2009 U.S. App. LEXIS 10564, at *15 ("Secondary meaning is generally accepted as the consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify.").

18.    The Fourth Circuit Court of Appeals has identified six factors that are relevant to a finding of secondary meaning: "(1) plaintiff's advertising expenditures; (2) consumer studies linking the mark to the source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of the plaintiff's business; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the

.

mark." *B&J Enter.,* 329 Fed. Appx. at 417, 2009 U.S. App. LEXIS 10564 at \*5 (citing *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 125 (4th Cir. 1990)) (the "Perini Factors"). No single factor is determinative and all factors need not be favorable for the plaintiff to prevail. *Id.*

19.      Of the six *Perini* factors, the last factor (the length and exclusivity of the plaintiff's use of the mark) appears to be the most supportive of Plaintiff's contention; therefore, the Court will address this factor first. The record establishes that Plaintiff has been doing business as Carolina Pediatric Dentistry since 2004. (Ver. Compl. ¶ 9.) Carolina Pediatric Dentistry has at all times focused exclusively on the practice of pediatric dentistry. (Johnson Aff. ¶ 5.) It is undisputed that until Defendant began its pediatric dental practice, Plaintiff was the only practice in Wake County with board certified specialists in pediatric dentistry using Carolina in its name. (Morris Aff. ¶¶ 16–17.)

20.      Defendant argues that Plaintiff's use of Carolina cannot be considered "exclusive" because there are many other businesses, including local dental practices, which use Carolina in their names. Defendant has provided evidence that over 30 dental and orthodontic practices begin their names with Carolina, and many of them list children's or pediatric dentistry as areas of practice on their websites. (Haas Decl. ¶¶ 8–43.) At least four of these practices are located within the Market Area. (*Id.* ¶¶ 9, 14, 15, 34.) The evidence establishes that while Plaintiff is a specialty pediatric dentistry practice, Plaintiff has not used the Carolina name to the exclusion of other dental practices that provide services to children, and the potential for confusion

.

among consumers from use of the name Carolina already existed prior to Defendant's practice. Other dental offices that treat children within the Market Area currently use Carolina in their names, and the evidence does not establish that the word Carolina is "instantly associated with one enterprise" in the Market area. *Charcoal Steak House*, 263 N.C. at 201–02, 139 S.E.2d at 187.

21.     With respect to the remaining *Perini* factors, the Court finds that evidence supporting a secondary meaning is minimal or non-existent. Plaintiff has admitted that there are no consumer studies linking the word Carolina to Carolina Pediatric Dentistry. The Court will not place substantial weight on the absence of a consumer study, however, given that these businesses are relatively small. With regard to sales success, the Court acknowledges that Plaintiff provided patient lists demonstrating that it has a substantial number of patients within the Market Area. (Morris Aff., Exs. A–B.) This evidence may be some indication of "sales success." Plaintiff has not provided evidence of unsolicited media coverage of its business or attempts to plagiarize its mark. Finally, Plaintiff did not produce evidence regarding its advertising expenditures. Plaintiff claimed that it advertises mostly through the development of "long-term, trusting relationships with referral sources and patient-families," and therefore does not rely on mass media or mailings, other than maintaining a website and a Facebook page, to grow their customer base. (Johnson Aff. ¶ 19; Ver. Compl. ¶ 11.) Plaintiff also provided evidence that it promotes its services through speaking engagements by its principal, Dr. Johnson. (Johnson Aff. Ex. 1; Johnson 2nd Aff. ¶ 18.) Plaintiff did not, however, provide evidence of the costs

.

associated with these types of marketing, and did not produce any specific evidence regarding the amount of its advertising *expenditures*.

22.     The Court concludes that Plaintiff has not made a sufficient showing of a likelihood of success in establishing "secondary meaning" to afford trademark protection to its use of the name Carolina in conjunction with any other words that suggest the practice of pediatric dentistry. Without secondary meaning, the use of the word Carolina, even in combination with or to denote a specialized pediatric practice, is merely generic or descriptive in nature, and is not afforded trademark protection.

23.     Plaintiff has failed to establish a likelihood of success on its claim against Defendant for unfair competition by trademark infringement, and the preliminary injunction should be denied.  Nevertheless, even if Plaintiff could show a protectable interest in the mark, the Court concludes that Plaintiff also failed to establish a likelihood of success on the issue of likelihood of confusion, as discussed below.

      b.  Likelihood of Confusion.

24.     Even if Plaintiff had established a likelihood of success that it had a protectable trademark, the Court concludes that Plaintiff has not shown a likelihood of confusion among the consuming public. Public confusion is an indicator of unfair competition. *Charcoal Steak House*, 263 N.C. at 203, 139 S.E.2d at 188 ("Unfair competition is the 'child of confusion.'"). "[T]he central question is whether 'numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of the defendant's

.

mark.'" *Trs. of Columbia Univ.*, 964 F. Supp. at 743. The more recent decisions in this Circuit have considered nine factors to determine whether a likelihood of confusion exists: "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public. *George & Co.,* 575 F.3d at 393; *Grayson O Co.*, 2015 U.S. Dist. LEXIS 153900, at *8; *Capitol Comm'n, Inc. v. Capitol Ministries*, 2013 U.S. Dist. LEXIS 142542, at *4 (E.D.N.C. Oct. 1, 2013). "Not all of these factors are of equal importance, 'nor are they always relevant in any given case.'" *George & Co.,* 575 F.3d at 393 (quoting *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992)). "To support a finding of infringement, a [p]laintiff must show a probability, not just a possibility, of confusion." *Capitol Comm'n, Inc.*, 2013 U.S. Dist. LEXIS 142542 at *5.

> i. *Strength or distinctiveness.*

25. The determination of a mark's strength or distinctiveness is analyzed under the same standards applied to the protectability of the mark as discussed above. *George & Co.*, 575 F.3d at 393–96. The Court already has determined that Plaintiff failed to establish a secondary meaning, and Plaintiff's mark is not particularly strong or distinctive.

> ii. *Similarity of the marks.*

.

26.    "In assessing the similarity of the marks . . . we focus on the dominant portions of the parties' marks. In other words, we focus on whether there exists a similarity in sight, sound, and meaning which would result in confusion." *George & Co.*, 575 F.3d at 396 (citations omitted). Here, however, there is not a dominant part, or word, in the mark. Both "Carolina" and "Pediatric Dentistry" are, at best, descriptive. "[A] descriptive word can never constitute the dominant part of a mark." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1530 (4th Cir. 1984). In addition, Plaintiff has disclaimed any protectable interest in the word Carolina standing by itself. "The effect of a disclaimer is to disavow any exclusive right to the use of a specified word, phrase, or design outside of its use within a composite mark." *Id.* at 1529 (citation omitted). The most that can be done in this case is to assess the similarity, and likelihood of confusion, between the composite terms "Carolina Pediatric Dentistry" and "Carolina Orthodontic and Children's Dentistry."

27.    The Court concludes that the names Carolina Pediatric Dentistry and Carolina Orthodontic and Children's Dentistry are not confusingly similar. Placed side-by-side, there would be virtually no likelihood of confusion. Consumers "examining the marks side-by-side unquestionably would conclude that the two marks are quite different." *George & Co.*, 575 F.3d at 397. This factor weighs against a finding of confusion.

    *iii. Similarity of services and facilities used.*

.

28.     The services that Plaintiff and Defendant provide are concededly the same. (Def.'s Br. Opp. Mot. Prelim. Inj. 15.) Both practices operate out of dental offices in office plazas.[10]  These factors support a finding of confusion.

  *iv.  Similarity of Advertising.*

29.     In assessing the similarity of advertising, the relevant question is whether there is "a possibility that a consumer could see or hear advertisements for both establishments, and could think them related. . . ." *Pizzeria Uno*, 747 F.2d at 1535.  As noted above, Plaintiff maintains a Facebook page and an internet website, but advertises mostly through the development of personal referral relationships with other doctors. Defendant maintains a Facebook page and an internet website, but also uses mass mailings to surrounding areas and engages in community outreach and sponsoring of local sports teams. (Abdelbaky Decl. ¶ 10.) The potential for confusion among consumers encountering advertising from the parties is relatively low. Dr. Johnson uses personal relationships with other dental and medical providers as her primary marketing of Plaintiff's practice. These providers are highly unlikely to mistake Defendant's mailers or other marketing as emanating from Plaintiff. This factor does not support a finding of likelihood of confusion.

  *v.  Defendant's intent in adopting the mark.*

---

[10] The Court notes, however, that Plaintiff does not prominently display the name Carolina Pediatric Dentistry in its signage at its office.  Rather, road signage at the office plaza in which Plaintiff's office is located says "Dr. Johnson & Dr. Morris Pediatric Dentistry." The name "Carolina Pediatric Dentistry" is used on the door to Plaintiff's office as part of its logo. (Abdelbaky Decl. ¶ 17.)

.

30.     "If there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion. . . ." *Pizzeria Uno*, 747 F.2d at 1535. The evidence is conflicting as to whether Defendant's principals knew that Plaintiff used the name Carolina Pediatric Dentistry prior to choosing the original name of its practice, Carolina Orthodontic and Pediatric Dentistry. Dr. Abdelbaky and Dr. Arbon testified that they did not know Plaintiff was using the name Carolina Pediatric Dentistry at the time the name was chosen. (Abdelbaky Decl. ¶ 11; Arbon Decl. ¶ 9.) Dr. Abdelbaky also testified that the doctors investigated the use of the name before adopting it. (Abdelbaky Decl. ¶ 8.) They claim they chose the Carolina portion of the name primarily for reasons of geography. Plaintiff contends that Defendant must have known of its use of the name because Dr. Olsen was well acquainted with Drs. Johnson and Morris before he joined Defendant's practice,[11] and because Dr. Boes, one of Dr. Abdelbaky's dental partners, had previously referred a member of his family to Dr. Johnson for pediatric dental work. (Johnson 2nd Aff. ¶¶ 13–18.) Defendant contends that Drs. Abdelbaky and Arbon selected the name of the pediatric practice, and that Drs. Olsen and Boes were not involved in the decision. (Arbon Dep. 68–69.)

31.     The Court acknowledges that it is difficult to believe Defendant did not know that Plaintiff was operating a practice under the name Carolina Pediatric Dentistry at the time it chose the name for its practice. Even if the Court were to

---

[11] Plaintiff presented Dr. Morris' hearsay testimony that he spoke with Dr. Olsen after Defendant opened its pediatric practice, and that Dr. Olsen stated that he had discussed with "his superiors" the fact that Plaintiff was using Carolina in its name. (Morris Aff. ¶¶ 11–12.)

.

conclude, however, that Defendant knew Plaintiff was using that name, it would not establish that Defendant intentionally chose its name to trade upon the goodwill of Plaintiff's existing practice. Given the large number of businesses and other dental practices using Carolina in their names, and the distance between Defendant's offices and Plaintiff's office, Defendant's mere knowledge of the name would not raise an inference that it was intending to confuse consumers about the origin of its services. There is not sufficient evidence in the record to conclude that that Defendant intentionally chose its name to infringe on Plaintiff's reputation and goodwill.

> ### vi. Actual confusion.

32.    The Fourth Circuit Court of Appeals has held:

> The seventh and most important factor is actual confusion. Actual confusion can be demonstrated by both anecdotal and survey evidence. Evidence of only a small number of instances of actual confusion may be dismissed as *de minimis.*

*George & Co.*, 575 F.3d at 398 (citations omitted). "In assessing the weight of the evidence . . . the number of instances of actual confusion must be placed against the background of the number of opportunities for confusion before one can make an informed decision as to the weight to be given the evidence." *Id.* (citations omitted).

33.    Plaintiff has presented anecdotal evidence of two instances of actual confusion among its consumers: (1) Plaintiff received two telephone calls from patients who believed Plaintiff opened a new office location in Cary, and (2) Dr. Johnson overheard dentists at a presentation she was giving expressing the belief that she had recently opened a Cary office. The record evidence also demonstrates,

.

however, that since 2009, Plaintiff has had approximately 18,000 patients. (Morris Aff. ¶ 7, Ex. B.)[12] Defendant also noted that over one million people live in Wake County and over two million people live within the Market Area. (Def.'s Br. Opp. Mot. Prelim. Inj. 20 (citing publicly available 2010 census data).) On this record, the Court concludes that such evidence is de minimis. *See CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 268 (4th Cir. 2006) (holding actual confusion evidence was de minimis where "[o]nly two of the 130 respondents had both heard of [Defendant] and thought that it was related to or affiliated with [Plaintiff] . . . [o]ne additional respondent had not heard of [Defendant] but, judging by its name alone, thought that it might be affiliated . . . ."); *Wachovia Bank & Tr. Co. v. Crown Nat'l Bancorporation, Inc.*, 835 F. Supp. 882, 887 (W.D.N.C. 1993) (holding actual confusion cannot be established by a single incident). This evidence weighs against a likelihood of confusion.

### vii. *Quality of services.*

34.     It is clear that Dr. Johnson is a highly regarded pediatric dentist, and Plaintiff undoubtedly provides excellent services. There is no evidence, however, to suggest that Dr. Olsen is not also a qualified and competent pediatric dentist, albeit less experienced than Dr. Johnson. The Court cannot make a determination regarding the relative quality of the services offered by Plaintiff and Defendant.

### viii. *Sophistication of consuming public.*

---

[12] The 18,000 patient figure was provided by Defendant, apparently from a count conducted using the patient records attached to Dr. Morris' Affidavit. (Def.'s Br. Opp. Mot. Prelim. Inj. 19.)  Plaintiff did not dispute this figure in its reply brief or at the hearing.

.

35.     This consideration weighs significantly against Plaintiff's contention that Defendant's name will create confusion in the marketplace. Plaintiff gets its patients mostly from referrals by other dental, orthodontic, and health care providers. Dr. Johnson has developed the referral sources from her personal involvement in teaching, making presentations to other providers, and participating in professional organizations. The medical practitioners who refer to Plaintiff's practice are sophisticated consumers unlikely to mistake Defendant's practice for Plaintiff's, or to send their patients to the wrong dentist on a referral. Unlike Defendant, Plaintiff does not claim that it gets its patients from advertising or marketing directly to the patient-public. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996) ("[B]uyer sophistication will only be a key factor when the relevant market is not the public at-large. If the typical consumer in the relevant market is sophisticated in the use of -- or possesses an expertise regarding -- a particular product, such sophistication or expertise may be pertinent in determining the likelihood of confusion."). In addition, Plaintiff presented no evidence that the patient-public associates the name Carolina with Plaintiff's dental practice, but only that dentists and other medical providers make that association.

36.     Ultimately, the Court is guided by the North Carolina Supreme Court's holding in *Charcoal Steak House*:

> Merely to be the first to use a descriptive name, even if it acquires a secondary meaning, does not give the first user an unqualified right to engross it. Even if the words *charcoal steak house* had acquired a secondary meaning so as specifically to connote plaintiff's restaurant in Charlotte, plaintiff still would not be entitled to have

.

> defendant restrained from making *any* use whatever of words admittedly *publici juris*. All plaintiff could reasonably ask of the court is that defendant be required to do what he has already done, namely, so designate his restaurant as to prevent reasonably intelligent and careful persons from being misled.

263 N.C. at 203, 139 S.E.2d at 188. Despite Plaintiff's long-standing presence in the Market Area, Defendant has chosen a name sufficiently distinct from the name Carolina Pediatric Dentistry such that "reasonably intelligent and careful persons" will not be misled as to the source of the services. The Court concludes that Plaintiff failed to establish a likelihood of success on the question of consumer confusion.

37. At this stage of the litigation Plaintiff has not shown a likelihood of success on its claim for unfair competition because it has failed to present sufficient evidence that its trade name is protectable, or that there is a likelihood of confusion among consumers of its services. The Court need not address the issue of irreparable harm. The Court concludes, in its discretion, that Plaintiff's Motion for Preliminary Injunction should be DENIED.

38. THEREFORE, IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED.

SO ORDERED, this the 11th day of October, 2016.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases